VICTOR I. MINAHAN, ET AL.,[1] PETITIONERS *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 3146-85, 3147-85,     Filed March 5, 1987.
3148-85, 3203-85,
3204-85, 3205-85.

*Thomas J. Phillips* and *Roger C. Minahan,* for the petitioners.

*Sheldon M. Kay* and *Nelson Shafer,* for the respondent.

OPINION

CHABOT, *Judge*: Respondent determined deficiencies in Federal gift tax against petitioners for the calendar quarter

[1]Pursuant to sec. 7430(d), the Court has determined that the cases of the following petitioners could have been joined or consolidated and so these cases shall be treated as one civil proceeding for purposes of applying sec. 7430: Marilee Minahan, docket No. 3147-85; Estate of Mary M. Walter, Deceased, The Marine Trust Co., N.A., Personal Representative, docket No. 3148-85; Estate of John B. Torinus, Deceased, the Kellogg Citizens National Bank, and Louise B. Torinus, Co-Personal Representatives, docket No. 3203-85; Roger C. Minahan, docket No. 3204-85; and Louise B. Torinus, docket No. 3205-85.

Unless indicated otherwise, all section references are to sections of the Internal Revenue Code of 1954 as in effect for the period in issue.

ended September 30, 1981, in the following amounts:

| Docket No. | Petitioner | Deficiency |
|---|---|---|
| 3146-85 | Victor I. Minahan | $882,737.74 |
| 3147-85 | Marilee Minahan | 882,737.93 |
| 3148-85 | Estate of Mary M. Walter, deceased, the Marine Trust Co., N.A., personal representative | 1,796,800.32 |
| 3203-85 | Estate of John B. Torinus, deceased, the Kellogg Citizens National Bank and Louise B. Torinus, co-personal representatives | 592,747.86 |
| 3204-85 | Roger C. Minahan | 549,888.83 |
| 3205-85 | Louise B. Torinus | 589,725.25 |

The cases were called from the calendar for trial on March 17, 1986, at which time respondent submitted on behalf of the parties a stipulated decision in each case. Pursuant to these stipulated decisions, the parties agreed that no deficiencies in Federal gift tax are due from, or overpayments due to, petitioners for the calendar quarter ended September 30, 1981. Petitioners thereafter moved this Court to award litigation costs pursuant to section 7430 and Rule 231.[2]

The issues for decision are as follows:[3]

(1) Whether petitioners have satisfied the definition of a prevailing party within the meaning of section 7430(c)(2); and

(2) Whether petitioners have exhausted administrative remedies available within the Internal Revenue Service within the meaning of section 7430(b)(2).

## Background

When the petitions were filed in the instant cases, petitioners resided in Wisconsin. On October 5, 1981, pursuant to similar stock purchase agreements dated September 28, 1981, petitioners sold shares of unregistered Post Corp. (hereinafter sometimes referred to as Post) common stock to trusts established for the primary benefit of an offspring of each petitioner. Petitioners valued the

---

[2]Unless indicated otherwise, all Rule references are to the Tax Court Rules of Practice and Procedure.

[3]The Court has severed, for determination in a separate opinion, the issue of whether a petitioner who is a member of the law firm representing petitioners is entitled to be awarded attorneys' fees as part of an award of litigation costs.

unregistered Post common stock at $22.25 per share, a purchase price equal to the closing price of Post shares on the American Stock Exchange on September 28, 1981. Each trust rendered partial payment in cash and partial payment by an interest-bearing promissory note. Respondent's valuation in the notices of deficiency was prepared by respondent's National Office. Respondent's appraisal discounted the value of the promissory notes and aggregated all 357,124 shares sold by petitioners pursuant to the stock purchase agreements as a control block of Post common stock. As of September 28, 1981, the following petitioners[4] were corporate officers of Post:

> Victor I. Minahan - President
> Mary M. Walter - Vice President
> John B. Torinus - Vice President
> Roger C. Minahan - Secretary

Respondent began the audit at the administrative level on or about February 9, 1984. A telephone conference was held between respondent's examiner and petitioners' counsel on August 1, 1984. On August 31, 1984, respondent asked petitioners to execute a consent to extend the period for assessment until December 31, 1985. The period for assessment, as prescribed in section 6501(a), would otherwise expire on November 15, 1984. On October 5, 1984, petitioners refused to consent to extend this period. Respondent did not issue preliminary notices of proposed deficiency (so-called 30-day letters). Respondent issued notices of deficiency to all the petitioners on November 15, 1984, the last day prescribed in section 6501(a). On December 14, 1984, petitioners asked for a written statement of valuation as provided by section 7517.[5] Respondent failed to comply within the 45-day period prescribed by section 7517(a). Respondent did provide a valuation statement on October 10, 1985. Petitioners filed their petitions in this Court on February 11, 1985. Petitioners participated in Appeals

---

[4]Mary M. Walter died before the start of this civil proceeding; her estate is the petitioner in docket No. 3148-85. John B. Torinus, who filed the petition in docket No. 3203-85, died on Oct. 12, 1985; his estate was then substituted as petitioner in this docket.

[5]We note that the value determined or proposed and set forth in such a statement is not binding on respondent. Sec. 7517(c).

Office conferences while the instant cases were in docketed status.

Petitioner Roger C. Minahan (hereinafter sometimes referred to as attorney Minahan), petitioners' counsel of record, is a senior stockholder and president of the law firm of Minahan & Peterson, S.C. (hereinafter sometimes referred to as the law firm). Petitioners engaged the law firm to represent them regarding the determinations in the notices of deficiency. The agreement between petitioners and the law firm was such that the law firm submitted monthly bills for actual time spent, determined at the law firm's prevailing rates. The law firm spent a total of 386 attorney hours on behalf of petitioners, using the services of eight attorneys. Attorney Minahan spent a total of 102¾ hours on behalf of petitioners, billed at the law firm's prevailing rate for his service, $150 per hour. Monthly statements reflected time spent on all six dockets. Each petitioner agreed to pay the proportion of the total monthly bill by which the number of that petitioner's shares of Post common stock sold bore to the total number of shares of Post common stock sold by petitioners under the similar purchase agreements in issue. All fees and disbursements reflected in the monthly statements and submitted pursuant to Rule 231(d) have been paid by petitioners in the amounts indicated in table 1.

TABLE 1

| Petitioner | Expert appraisal fees | Attorneys' fees and disbursements[6] | Proportionate interest |
|---|---|---|---|
| Victor I. Minahan, docket No. 3146-85 | $3,360 | $18,484.40 | 33.6% |
| Marilee Minahan, docket No. 3147-85 | (included above with docket No. 3146-85) | | |
| Estate of Mary M. Walter, docket No. 3148-85 | 2,940 | 16,173.84 | 29.4% |
| Estate of John B. Torinus, docket No. 3203-85 | 2,520 | 13,863.29 | 25.2% |
| Louise B. Torinus, docket No. 3205-85 | (included above with docket No. 3203-85) | | |

[6]These amounts include the Court costs, which consist of the $60 filing fee for each docket.

| Petitioner | Expert appraisal fees | Attorneys' fees and disbursements | Proportionate interest |
|---|---|---|---|
| Roger C. Minahan, | $1,180 | $6,491.55 | 11.8% |
| docket No. 3204-85 | 10,000 | 55,013.08[7] | 100.0% |

Of the $55,013.08 attorneys' fees and disbursements, $2,550 was billed to petitioners on October 16, 1984, and $8,348.15 was billed to petitioners on February 8, 1985; all of these two bills are for services and disbursements before the petitions were filed in the instant cases. Of the $55,013.08 total, $2,225 was billed to petitioners on March 7, 1985; about half is for services before the petitions were filed in the instant cases.

Of the total 386 attorney hours spent by the law firm on the instant cases, 70 attorney hours were spent after the last billing that was taken into account in determining the $55,013.08 attorney fees and disbursements. At the law firm's prevailing rate for the services of its attorneys, these 70 attorney hours would produce about $9,000 in billings.

## Analysis

The Congress has provided for the awarding of litigation costs to taxpayers in certain circumstances. Under section 7430[8] (applicable to the instant cases), in order to be

---

[7] The affidavit accompanying petitioners' motion avers that "The aggregate amount of legal fees and disbursements (other than appraisal fees) incurred were $45,013.08." However, petitioners' motion and the statements attached to the affidavit show fees aggregating $55,013.08, and our finding is in accord with the motion and the statements.

[8] Sec. 7430 provides, in pertinent part, as follows:

SEC. 7430. AWARDING OF COURT COSTS AND CERTAIN FEES.

(a) IN GENERAL.—In the case of any civil proceeding which is—

(1) brought by or against the United States in connection with the determination, collection, or refund of any tax, interest, or penalty under this title, and

(2) brought in a court of the United States (including the Tax Court and the United States Claims Court),

the prevailing party may be awarded a judgment (payable in the case of the Tax Court in the same manner as such an award by a district court) for reasonable litigation costs incurred in such proceeding.

(b) LIMITATIONS.—

(1) MAXIMUM DOLLAR AMOUNT.—The amount of reasonable litigation costs which may be awarded under subsection (a) with respect to any prevailing party in any civil proceeding shall not exceed $25,000.

(2) REQUIREMENT THAT ADMINISTRATIVE REMEDIES BE EXHAUSTED.—A judgment for reasonable litigation costs shall not be awarded under subsection (a) unless the court determines that the prevailing party has exhausted the administrative remedies available to such party within the Internal Revenue Service.

\* \* \* \* \* \* \*

entitled to an award of litigation costs, the taxpayer must—

(1) Substantially prevail in the litigation (sec. 7430(c) (2)(A)(ii));

(2) Establish that respondent's position is unreasonable (sec. 7430(c)(2)(A)(i)); and

(3) Have exhausted the administrative remedies available to that taxpayer in the Internal Revenue Service (sec. 7430(b)(2)).

These requirements are in the conjunctive; i.e., petitioners must overcome *each* of these hurdles in order to succeed as to litigation costs.

We consider these hurdles seriatim.

## I. Prevailing in the Litigation

Respondent determined deficiencies aggregating about $5.3 million. The parties settled the instant cases for an aggregate of zero. We conclude, and respondent agrees, that

---

(c) DEFINITIONS.—For purposes of this section—

    \*      \*      \*      \*      \*      \*      \*

(2) PREVAILING PARTY.—

    (A) IN GENERAL.—The term "prevailing party" means any party to any proceeding described in subsection (a) (other than the United States or any creditor of the taxpayer involved) which—

    (i) establishes that the position of the United States in the civil proceeding was unreasonable, and

    (ii)(I) has substantially prevailed with respect to the amount in controversy, or

    (II) has substantially prevailed with respect to the most significant issue or set of issues presented.

    (B) DETERMINATION AS TO PREVAILING PARTY.—Any determination under subparagraph (A) as to whether a party is a prevailing party shall be made—

    (i) by the court, or

    (ii) by agreement of the parties.

(3) CIVIL ACTIONS.—The term 'civil proceeding' includes a civil action.

(d) MULTIPLE ACTIONS.—For purposes of this section, in the case of—

    (1) multiple actions which could have been joined or consolidated, or

    (2) a case or cases involving a return or returns of the same taxpayer (including joint returns of married individuals) which could have been joined in a single proceeding in the same court,

such actions or cases shall be treated as one civil proceeding regardless of whether such joinder or consolidation actually occurs, unless the court in which such action is brought determines, in its discretion, that it would be inappropriate to treat such actions or cases as joined or consolidated for purposes of this section.

[The subsequent amendments of this provision by sec. 1551 of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085, 2752—except the amendment to sec. 7430(a) made by sec. 1551(f) of the Tax Reform Act of 1986 (relating to payment of awarded litigation costs)—apply only to civil actions or proceedings commenced after Dec. 31, 1985 (sec. 1551(h)(1) of the Tax Reform Act of 1986), and so do not affect the instant cases.]

petitioners have substantially prevailed in the instant cases, thus satisfying the requirements of section 7430(c)(2)(A)(ii).

## II. Reasonableness of Respondent's Position

The next focus of our inquiry is whether the position of the United States in the instant cases was unreasonable within the meaning of section 7430(c)(2)(A)(i). The statute imposes on petitioners the burden of establishing such unreasonableness. This Court and the Courts of Appeals of several circuits have previously determined that any award of costs under section 7430 is to be based on a determination of the reasonableness of respondent's position from the date the petition was filed. *Ewing and Thomas, P.A. v. Heye*, 803 F.2d 613 (11th Cir. 1986); *Baker v. Commissioner*, 787 F.2d 637 (D.C. Cir. 1986), affg. on this issue 83 T.C. 822, 827 (1984); *Wasie v. Commissioner*, 86 T.C. 962, 967 (1986). Other courts have held that fees and costs and the measure of the reasonableness of respondent's position extends to the administrative level. *Powell v. Commissioner*, 791 F.2d 385 (5th Cir. 1986), revg. a Memorandum Opinion of this Court;[9] *Kaufman v. Egger*, 758 F.2d 1 (1st Cir. 1985). The Court of Appeals for the Seventh Circuit, to which the instant cases are appealable, has not ruled as to whether the prepetition factors are relevant to the determination of whether respondent's position is reasonable. The fact that respondent ultimately is unsuccessful at litigation or concedes the case is not necessarily determinative that his position was unreasonable. *Wasie v. Commissioner*, 86 T.C. at 969, and cases cited therein.

Respondent asserts that his position in the instant cases was not unreasonable because valuation is a factual question and the determinations in the notices of deficiency were based upon expert opinion. Respondent merely states that reliance upon expert appraisal in valuation cases is reasonable. Respondent cites no authority for the legal position upon which the valuation was made. Respondent aggregated and valued as a control block of common stock all 357,124 shares of unregistered Post common stock sold by petitioners to separate trusts each of which was established for the primary benefit of an offspring.

---

[9]T.C. Memo. 1985-27.

Petitioners assert that respondent has disregarded the regulations and case authorities in the determination that the value of the unregistered Post common stock sold to the separate trusts under the agreements at issue embodied a control premium by virtue of aggregation. Sec. 25.2512-2(e), Gift Tax Regs.; *Propstra v. United States*, 680 F.2d 1248 (9th Cir. 1982); *Estate of Bright v. United States*, 658 F.2d 999 (5th Cir. 1981); *Estate of Andrews v. Commissioner*, 79 T.C. 938 (1982). In *Estate of Bright*, the Court of Appeals for the Fifth Circuit held, en banc, that the estate's stock was to be valued as though held by a hypothetical seller who is related to no one. *Estate of Bright v. United States*, 658 F.2d at 1007. In *Estate of Andrews*, we stated that "For purposes of valuation, one should construct a hypothetical sale from a hypothetical willing seller to a similarly hypothetical willing buyer", without regard to the fact "that the stock will most probably be sold to a particular party or type of person." *Estate of Andrews v. Commissioner*, 79 T.C. at 955, 956. Respondent's determination of a control premium by virtue of aggregation assumes that trustees of the separate trusts would sell or otherwise hold their interests together with sufficient others so as to exercise control of Post. As stated in *Propstra*, the use of an objective standard without aggregation avoids the uncertainties that would otherwise be inherent if valuation methods attempted to account for the likelihood that estates, legatees, or heirs would sell their interests together with others who hold interests in the property, and avoids an examination of anticipated behavior of those holding such interests. *Propstra v. United States*, 680 F.2d at 1252. It has been noted that the Congress has explicitly directed that family attribution or unity of ownership principles be applied in certain aspects of Federal taxation, and in the absence of legislative directives, judicial forums should not extend such principles beyond those areas specifically designated by Congress. Furthermore, the subjective inquiry into feelings, attitudes, and anticipated behavior might well be boundless. *Propstra v. United States*, 680 F.2d at 1252; *Estate of Andrews v. Commissioner*, 79 T.C. at 955.

We conclude that petitioners have established that respondent's litigation position was unreasonable. Petitioners filed their petitions in this Court on February 11, 1985. Respondent filed his answers on April 5, 1985. Petitioners participated in Appeals Office conferences while the case was in docketed status. On December 24, 1985, the Court served on the parties notices of trial scheduled for March 17, 1986. Respondent agreed to concede the cases on February 17, 1986. In our view, respondent simply capitulated rather than litigate the valuation theory upon which the notices of deficiency are founded. Respondent has not cited any legal authority or presented any argument to indicate that his valuation was reasonable. Respondent's assertion that the litigation position was reasonable solely because valuation is a factual inquiry and that the valuation herein was based on an expert appraisal is woefully inadequate to establish that his position is reasonable. In the context of the instant cases, petitioners have carried their burden (see *Frisch v. Commissioner*, 87 T.C. 838 (1986)) of establishing that respondent's legal position was unreasonable within the meaning of section 7430(c)(2)(A)(i).

In so holding, we emphasize that we find respondent's position unreasonable only because, by espousing a family attribution approach, he seeks to repudiate a well-established line of cases of long and reputable ancestry, going back as far as 1940. This line of cases is cataloged in the en banc opinion of the Court of Appeals for the Fifth Circuit in *Estate of Bright v. United States*, 658 F.2d at 1002-1003, and is repeated in footnote 19 of our opinion in *Estate of Andrews v. Commissioner*, 79 T.C. at 954 (discounts applied for lack of control and marketability even though decedent and his siblings held all stock in several corporations). As we pointed out there, respondent's litigating position on this issue was announced in Rev. Rul. 81-253, 1981-2 C.B. 187. In response, we said in *Estate of Andrews* that "We see no reason to depart from such established precedent but follow the Fifth Circuit's well-reasoned and thoroughly researched [*Estate of Bright*] opinion." 79 T.C. at 956. In the instant cases, respondent persists in the face of *Estate of Andrews* and its progenitors; in these cases, the persistence is unreasonable.

We note that we are not required, in the instant cases, to confront the question of when an attempt to create a conflict among the circuits might or might not be enough to save respondent from a charge of unreasonableness. See, e.g. *Keasler v. United States*, 766 F.2d 1227, 1234-1238 (8th Cir. 1985). We can leave that question to another day because, in respondent's memorandum in the instant cases there is not even a hint that he is attempting to create a conflict among the circuits; there is only a contention that "In valuation cases, it is certainly reasonable for respondent to rely on an expert's appraisal". Where the valuation element in dispute is essentially a point of law that respondent has lost for more than 40 years, respondent may not extricate himself from a holding of unreasonableness merely because his valuation expert is also unreasonable. See *Frisch v. Commissioner, supra.*

## III. Exhaustion of Administrative Remedies

Respondent asserts that petitioners failed to exhaust administrative remedies available within the Internal Revenue Service as required by section 7430(b)(2). Respondent relies on section 301.7430-1(b)(1), Proced. & Admin. Regs.,[10] and section 301.7430-1(f), Proced. & Admin. Regs.[11] Respon-

---

[10]Sec. 301.7430-1. Exhaustion of administrative remedies.— * * *

(b) *Tax, penalty and addition to tax*—(1) *In general.* A party has not exhausted its administrative remedies available within the Internal Revenue Service with respect to any tax matter for which an Appeals office conference is available under secs. 601.105 and 601.106 of the Statement of Procedural Rules (26 CFR Part 601) * * * unless—

(i) The party, prior to filing a petition in the Tax Court or a civil action for refund in a court of the United States—

(A) Participates, either in person or through a qualified representative * * * in an Appeals office conference; and

(B) Agrees under section 6501(c)(4) to extend the time for an assessment of tax if necessary to provide the Appeals office with a reasonable time period to consider the tax matter; or

(ii) If no Appeals office conference is granted, the party, prior to the issuance of a statutory notice of deficiency in the case of a petition in the Tax Court or the issuance of a statutory notice of disallowance in the case of a civil action for refund in a court of the United States—

(A) Requests an Appeals office conference * * *;

(B) Files a written protest if a written protest is required to obtain an Appeals office conference; and

(C) Agrees under section 6501(c)(4) to extend the time for an assessment of tax if necessary to provide the Appeals office with a reasonable time period to consider the tax matter.

[11]Sec. 301.7430-1. Exhaustion of administrative remedies.— * * *

(f) *Exception to requirement that party pursue administrative remedies.* A party's administrative remedies within the Internal Revenue Service are considered exhausted for purposes of section 7430 if—

(1) The Internal Revenue Service notifies the party in writing that the pursuit of administrative remedies in accordance with paragraphs (b), (c), and (d) is unnecessary.

dent asserts that petitioners failed to exhaust administrative remedies available within the Internal Revenue Service in that petitioners did not participate in an Appeals Office conference before filing their petitions in the Tax Court, and in that petitioners refused to agree under section 6501(c)(4) to extend the time for an assessment of tax so as to provide the Appeals Office with reasonable time to consider the matter. Respondent further asserts that the exceptions to the requirement that a party pursue administrative remedies, in section 301.7430-1(f), Proced. & Admin. Regs., where a party did not receive a 30-day letter before the notice of deficiency was issued, do not apply because the failure to receive the 30-day letter was due to petitioners' refusal to consent to extend the period for assessment. Sec. 301.7430-1(f)(2)(i), Proced. & Admin. Regs.

Petitioners assert that section 6501 provides them with a statutory right to receive notice of any assessment of tax within the prescribed 3-year period and that the refusal to extend the statute of limitations does not constitute a failure to exhaust administrative remedies so as to preclude an award of litigation costs under section 7430(b)(2). Petitioners further assert that the exemption in section 301.7430-1(f)(2)(i), Proced. & Admin. Regs., does apply because petitioners' failure to receive 30-day letters was not due to their actions but, rather, due to respondent's nonaction at the administrative level.

We agree with petitioners' conclusion.

Although the parties direct us to respondent's procedural and administrative regulations, we believe that the focus of our attention should be, at least initially, the statute that the Congress wrote.

In section 7430(b)(2),[12] the Congress provided as follows:

---

(2) In the case of a petition in the Tax Court—

(i) The party did not receive a preliminary notice of proposed deficiency (30-day letter) prior to the issuance of the statutory notice of deficiency and the failure to receive such notice was not due to actions of the party (such as a refusal to sign an extension of time for assessment * * *); and

(ii) The party does not refuse to participate in an Appeals office conference while the case is in docketed status.

[12]As a result of sec. 1551(a) of the Tax Reform Act of 1986, the same language appears as sec. 7430(b)(1), effective in general for proceedings commenced after Dec. 31, 1985. See sec. 1551(h)(1) of the Tax Reform Act of 1986, *supra*.

(2) REQUIREMENT THAT ADMINISTRATIVE REMEDIES BE EXHAUSTED.—A judgment for reasonable litigation costs shall not be awarded under subsection (a) unless the court determines that the prevailing party has exhausted the administrative remedies available to such party within the Internal Revenue Service.

In the instant cases, respondent claims petitioners failed to exhaust their administrative remedies in that (1) they failed to participate in an Appeals Office conference, and (2) they refused to extend the time for assessment of tax.

Firstly, the controlling statute does not speak in terms of administrative remedies in the abstract, but rather focuses on "the administrative remedies available to *such party* [the prevailing party] within the Internal Revenue Service." (Emphasis added.) Respondent did not make an Appeals Office conference available to petitioners. Consequently, an Appeals Office conference was not an administrative remedy available to *these* petitioners within the Internal Revenue Service. Consequently, an Appeals Office conference was not an administrative remedy that these petitioners failed to exhaust.

Secondly, an extension of time for assessment is not an administrative remedy at all; consequently it is not an administrative remedy that these petitioners failed to exhaust.

Respondent does not assert that petitioners failed to respond promptly and sufficiently to any request for information or discussion. The record does not reveal any such failure on the part of any petitioner. Respondent does not assert, and the record does not reveal, any other administrative remedy which petitioners failed to exhaust.

We conclude that petitioners have carried their burden of proving that they exhausted the administrative remedies available to them within the Internal Revenue Service.

Since respondent relies entirely on his regulations in this matter, we examine those regulations to which he directs us.

In our unanimous opinion in *Durbin Paper Stock Co. v. Commissioner*, 80 T.C. 252, 256-257 (1983), we set down the following standards for examining the validity of respondent's regulations:

The Commissioner has broad authority to promulgate all needful regulations. Sec. 7805(a); *United States v. Correll*, 389 U.S. 299, 306-307 (1967). It is well settled that Treasury regulations "must be sustained unless unreasonable and plainly inconsistent with the revenue statutes." *Commissioner v. South Texas Lumber Co.*, 333 U.S. 496, 501 (1948); accord *Commissioner v. Portland Cement Co. of Utah*, 450 U.S. 156, 169 (1981). Because they constitute contemporaneous constructions by those charged with administration of these statutes, they "should not be overruled except for weighty reasons." *Bingler v. Johnson*, 394 U.S. 741, 750 (1969); *Commissioner v. South Texas Lumber Co.*, supra at 501.

It is equally clear, however, that, although regulations are entitled to considerable weight, "respondent may not usurp the authority of Congress by adding restrictions to a statute which are not there." *Estate of Boeshore v. Commissioner*, 78 T.C. 523, 527 (1982). See *United States v. Marvett*, 325 F. 2d 28, 30 (5th Cir. 1963); *Coady v. Commissioner*, 33 T.C. 771, 779 (1960), affd. 289 F.2d 490 (6th Cir. 1961). A regulation is not a reasonable statutory interpretation unless it harmonizes with the plain language of the statute, its origins, and its purpose. *United States v. Vogel Fertilizer Co.*, 455 U.S. 16 (1982); *National Muffler Dealers Association v. United States*, 440 U.S. 472, 477 (1979).

A regulation which is in conflict with the statute is invalid to that extent. *Citizen's National Bank of Waco v. United States*, 417 F.2d 675, 679 (5th Cir. 1969); *Arrow Fastener Co. v. Commissioner*, 76 T.C. 423, 430 (1981). Where the provisions of the statute are unambiguous and its directive specific, there is no power to amend it by regulation. *Koshland v. Helvering*, 298 U.S. 441, 447 (1936); *Arrow Fastener Co. v. Commissioner, supra.*[5]

[5]The regulation in issue is an "interpretative" regulation issued under general authority vested in respondent under sec. 7805 and is to be accorded less weight than "legislative" regulations issued pursuant to a specific congressional delegation of law-making authority. *Estate of Boeshore v. Commissioner*, 78 T.C. 523, 527 n. 5 (1982).

In the instant cases, the legislative history presents us with another consideration. In the description of the reasons for enacting section 7430 in the Tax Equity and Fiscal Responsibility Act of 1982, the first reason given is as follows:

Fee awards in such tax cases [i.e., "when the United States has acted unreasonably in pursuing the case"] will deter abusive actions or overreaching by the Internal Revenue Service and will enable individual taxpayers to vindicate their rights regardless of their economic circumstances. [H. Rept. 97-404 (1981), at 11; Staff of the Joint Committee on Taxation, General Explanation of the Revenue Provisions of the Tax Equity and Fiscal Responsibility Act of 1982, at 445.]

When the regulation interpreting a statute is written by the very agency whose "abusive actions or overreaching" were intended to be deterred by that statute, we must be especially vigilant to insure that the regulation "harmonizes with the plain language of the statute, its origins, and its purpose." *Durbin Paper Stock Co. v. Commissioner*, 80 T.C. at 257.

In the instant cases, respondent relies on paragraphs (b)(1)(i)(B) and (f)(2)(i) of section 301.7430-1, Proced. and Admin. Regs.

Paragraph (b)(1)(i)(B) *requires* a taxpayer "to extend the time for an assessment of tax if necessary to provide the Appeals Office with a reasonable time period to consider the tax matter". The sanction for a taxpayer who refuses to grant the waiver is loss of litigation costs—even though the taxpayer substantially prevails in the litigation and the taxpayer establishes that respondent's position was unreasonable.

Paragraph (f)(2)(i) *requires* a taxpayer "to sign an extension of time for assessment", that is necessary in order to permit respondent to issue a 30-day letter, which might lead to an Appeals Office conference. Note that paragraph (f)(2)(i) does not include any reasonableness limitation. Here, too, the sanction for failure to comply is loss of litigation costs—even though the taxpayer substantially prevails in the litigation and the taxpayer establishes that respondent's position was unreasonable.

There is no statutory authority to impose a condition of extending the period of limitations on assessment in order to qualify for litigation costs. The statute of limitations, section 6501 and its many subsections, is an elaborate and complex set of rules applicable to numerous situations.[13] When the Congress has seen fit to amend section 6501, it has done so explicitly and meticulously.[14] The importance of

[13]Other statutes of limitations appear elsewhere in the statute. For example, special partnership limitations had been contained in sec. 6501(q), then modified and redesignated sec. 6501(o), and then substantially revised by the Tax Treatment of Partnership Items Act of 1982 (title IV of the Tax Equity and Fiscal Responsibility Act of 1982) and placed in sec. 6229. Also, a special statute of limitations appears in sec. 183(e)(4), in the case of elections made under sec. 183(e)(1).

[14]The Congress amended sec. 6501 in 1958 (Pub. Laws 85-859 and 866); 1959 (Pub. L. 86-69); 1960 (Pub. L. 86-780); 1962 (Pub. Laws 87-794, 834, and 858); 1964 (Pub. Laws 88-272 and 571), 1965 (Pub. L. 89-44); 1966 (Pub. Laws 89-721 and 809); 1967 (Pub. L. 90-225); 1969 (Pub. L. 91-172); 1970 (Pub. L. 91-614); 1971 (Pub. L. 92-178); 1974 (Pub. L. 93-406); 1976 (Pub. L.

the statute of limitations is demonstrated by the fact that it is one of the few areas of the tax law where the burden of proof is imposed on respondent. (E.g., *Stratton v. Commissioner*, 54 T.C. 255, 289 (1970), and cases there cited.) It is not treated lightly by the courts. The clear language of paragraphs (b)(1)(i)(B) and (f)(2)(i) forces consent to extend the period of limitations by a taxpayer who contemplates claiming litigation costs where respondent's position is unreasonable. This gives radical control of the statute of limitations to respondent.

In granting taxpayers the right to collect litigation costs, the Congress did not suggest that taxpayers should be required to consent to extend the period of limitations. The Congress could have, but did not, amend section 6501. Nothing in the legislative history of section 7430 suggests that the Congress intended to alter the provisions of section 6501, and the Congress did not provide for extensions of time in section 7430.

The Congress previously expressed itself on the statute of limitations when respondent attempted to alter the application of section 6501 in the provisions involving hobby losses. Section 183(e) was added to the Code in 1971 to provide an election to the taxpayer to postpone a determination as to whether the taxpayer could benefit from a presumption that an activity was conducted for profit if the activity produced gross income for 2 of 5 years (2 of 7 years for horses). The Senate Finance Commmittee, which originated the provision, expressed an intent that a taxpayer who made such an election should be required to waive the statute of limitations for that 5-year (or 7-year) period and a reasonable time thereafter. The purpose was to prevent the running of the period of limitations for any year in that period. S. Rept. 92-437 (1971), at 74; Staff of the Joint Committee on Internal Revenue Taxation, General Explanation of the Revenue Act of 1971, at 72. The Treasury Department issued temporary regulations which required the taxpayer making such an election to waive the period of limitations for all years within the 5-year (or 7-year)

---

94-455); 1977 (Pub. L. 95-30); 1978 (Pub. Laws 95-227, 600, and 628); 1980 (Pub. Laws 96-222 and 223); 1982 (Pub. L. 97-248); 1984 (Pub. L. 98-369); and 1986 (Pub. L. 99-514, the Tax Reform Act of 1986).

presumption period and for 18 months after the last year in the presumption period. The temporary regulations further provided that the waiver applied not only to the potential section 183 issue but to *all* potential issues on the tax returns.

This provision was included in the temporary regulations because respondent is precluded from mailing more than one notice of deficiency to a taxpayer for a given taxable year. If respondent examined a year for a nonsection 183 issue and mailed a statutory notice and later determined that the hobby loss provisions applied for that year, then respondent would be forbidden to mail a second notice of deficiency. The Congress amended the Code by adding section 183(e)(4) which changes the period of limitations on assessment and permits mailing a second notice of deficiency. In so doing, the Congress emphasized the importance of the statute of limitations as a right of the taxpayer, as follows:

[The Congress] believes that a taxpayer should be able to take full advantage of a statutory presumption which was intended for his benefit, without unnecessarily extending the statute of limitations for items on his return which are unrelated to deductions which might be disallowed under section 183. [S. Rept. 94-938, (1976), at 67-68, 1976-3 C.B. (Vol. 3) 49, 105-106; H. Rept. 94-658 (1975), at 128, 1976-3 C.B. (Vol. 2) 695, 820; Staff of the Joint Committee on Taxation, General Explanation of the Tax Reform Act of 1976, at 61, 1976-3 C.B. (Vol. 2) 1, 73.]

In that situation, the legislative history of the 1971 Act specifically suggested a waiver of the statute of limitations as a requirement for making elections under section 183(e). The Treasury Department's temporary regulation appears to have been no more extensive than it had to be, considering the state of the law at that time. Nevertheless, the Congress determined that required waivers should not be so broad and overrode the temporary regulation to provide by statute a far more limited waiver.

The situation we face in the instant cases is that respondent's regulations seek to coerce waivers broadly and without any authority in either the statute or the legislative history. The history of the 1976 Act indicates a congressional policy that such waivers should not be coerced except to the extent that the Congress has specifically authorized.

We conclude that paragraphs (b)(1)(i)(B) and (f)(2)(i) of section 301.7430-1, Proced. & Admin. Regs., are invalid insofar as they provide that a taxpayer's failure to extend the statute of limitations is to be taken into account in determining whether the taxpayer has exhausted administrative remedies under section 7430(b).

In reaching our conclusion, we have taken into account the Congress' admonition that the condition of section 7430(b)(2) that taxpayers exhaust the administrative remedies available within the Internal Revenue Service is "intended to preserve the role that the administrative appeals process plays in the resolution of tax disputes by requiring taxpayers to pursue such remedies prior to litigation." H. Rept. 97-404, *supra* at 13. The House report further states that a taxpayer who actively participates in and discloses all relevant information during the administrative stages of the case will be considered to have exhausted the administrative remedies available within the Internal Revenue Service. Failure to so participate and disclose all relevant information may be sufficient grounds to determine that such taxpayer has not exhausted administrative remedies and, therefore, is ineligible for an award of litigation costs. H. Rept. 97-404, *supra* at 13.

Accordingly, we note that we do not disturb the provisions in the regulations that require a taxpayer to participate in an Appeals Office conference if that administrative remedy is made available to that taxpayer within the Internal Revenue Service. We note also, that requests for information at the audit level may properly be viewed as administrative remedies in that they may result in the parties reaching informed agreements which avoid the necessity of litigation. We note, finally, that a taxpayer's failure to respond in a full and timely manner to requests for information may constitute a failure to exhaust administrative remedies made available to that taxpayer within the Internal Revenue Service.

We hold for petitioners on this issue.

*Appropriate orders will be issued.*

Reviewed by the Court.

STERRETT, NIMS, PARKER, WHITAKER, KÖRNER, CLAPP, SWIFT, JACOBS, WRIGHT, PARR, and WELLS, *JJ.*, agree with the majority opinion.

SIMPSON and COHEN, *JJ.*, concur in the result only.

GERBER and WILLIAMS, *JJ.*, did not participate in the consideration of this opinion.

---

SIMPSON, *J.*, concurring: I accept the conclusions of the majority that the petitioners have exhausted their administrative remedies in this case and that the regulations are invalid insofar as they appear to require a taxpayer to consent to an extension of the statute of limitations in all cases in order to be entitled to recover litigation costs. However, I respectfully suggest that the majority goes too far. Suppose that the Commissioner's agents commence a timely examination of a taxpayer's return, but the complexity or the multitude of legal or factual issues make it impossible to complete the examination within the 3-year period. In such circumstances, there is insufficient time to issue a 30-day letter and to provide the taxpayer with an opportunity for an appeals hearing before the running of the statute. In such circumstances, I believe that it would be reasonable for the Commissioner. to request the taxpayer to consent to an extension and that if the taxpayer refuses, we should hold that he has failed to exhaust his administrative remedies. In my opinion, the statute should be construed to include a test of reasonableness; that is, when the circumstances reveal that there was a reasonable need for the Commissioner to request an extension, the failure to grant one will constitute a failure to exhaust administrative remedies.

STERRETT, COHEN, and SWIFT, *JJ.*, agree with this concurring opinion.

---

HAMBLEN, *J.*, concurring and dissenting: I respectfully dissent from the portion of the majority opinion which invalidates section 301.7430-1(b)(1)(i)(B) and section

301.7430-1(f)(2)(i), Proced. & Admin. Regs., insofar as such regulations provide that a taxpayer's failure to extend the statute of limitations is relevant to our determination as to whether a taxpayer has exhausted administrative remedies available within the Internal Revenue Service as required by section 7430(b)(2). Courts should defer to interpretive regulations if the regulations are "found to 'implement the congressional mandate in some reasonable manner.'" *National Muffler Dealers Association v. United States*, 440 U.S. 472, 476 (1979). As recently suggested, "It follows from this principle of deference to Treasury regulations that the existence of an interpretive regulation should be decisive in a case in which an interpretive regulation is appropriate and in which reasonable arguments can be made both for a literal interpretation and for a nonliteral contextual interpretation" of the statutory provisions of the Internal Revenue Code. Zelenak, "Thinking About Nonliteral Interpretations of the Internal Revenue Code," 64 N.C.L. Rev. 623, 673-674 (1986). "The choice among reasonable interpretations is for the Commissioner, not the courts." *National Muffler Dealers Association v. United States, supra* at 488. And we have appropriately announced that we prefer to interpret regulations "so as to uphold their validity." *Graves v. Commissioner*, 88 T.C. 28 (1987), and cases cited.

I submit that it is not proper for this Court to strike down interpretative regulations such as these which can be applied without regard to whether the consequences benefit the Government or the taxpayer but which carry out the purpose, indeed the mandate, of the legislation before us. In this respect, I note the majority's reliance on "our unanimous opinion in *Durbin Paper Stock Co. v. Commissioner*, 80 T.C. 252, 256-257 (1983)," as the absolute canon of judicial statutory construction in this case. See 88 T.C. at 32-33. However, as I read the quoted section from *Durbin Paper Stock Co.* in the majority opinion, it merely confirms that rules of statutory construction may be applied to obtain the objective or result intended. In this respect, I cite *National Muffler Dealers Association v. United States, supra*, to reach what I believe is the correct standard. It seems, perhaps, that such precepts, like passages from the

Bible, can be cited to support diverse propositions or platforms, and it has been observed that such rules are mutually contradictory and may be considered neither generally accepted nor consistently applied by American courts. Zelenak, *supra* at 630-633. "There are no talismanic words that can avoid the process of judgment." *Universal Camera Corp. v. Labor Bd.*, 340 U.S. 474, 489 (1951). As the courts of old held, rather pragmatically it seems to me, a statute which provides that a prisoner who escapes commits a felony "does not extend to a prisoner who breaks out when the prison is on fire—'for he is not to be hanged because he would not stay to be burnt.' " Zelenak, *supra* at 632, quoting *United States v. Kirby*, 74 U.S. (7 Wall.) 482, 487 (1868). I fear that here the majority condemns innocent regulations because they will not submit them to the test of reasonableness.

In the instant case, I would reach the same result as the majority without the inappropriate and unnecessary invalidation of the pertinent regulation. My view is that respondent's regulations are reasonable and capable of application in a manner consistent with the intent of Congress, as evidenced within the statute and gleaned from the legislative history. Consequently, the invalidation of paragraphs (b)(1)(i)(B) and (f)(2)(i) of section 301.7430-1, Proced. & Admin. Regs., is neither appropriate nor necessary. In the context of the entitlement to an award of litigation costs, the majority opinion does a great disservice to the entire administrative process of the Internal Revenue Service and obscures a clear congressional preference that cases be resolved in the administrative process rather than the legal forum.

I would determine that petitioners exhausted administrative remedies made available within the Internal Revenue Service for purposes of section 7430(b)(2) notwithstanding the refusal to extend the period for assessment. I submit that respondent's interpretive regulation, in general, establishes "the circumstances in which the Internal Revenue Service *normally will consider* such administrative remedies exhausted." Sec. 301.7430-1(a), Proced. & Admin. Regs. (Emphasis added.) In this context, respondent's regulation sets forth the standard that a party's entitlement to an

award of litigation costs is dependent upon such party's agreement "to extend the time for an assessment of tax *if necessary to provide the Appeals office with a reasonable time period to consider the tax matter.*" Sec. 301.7430-1(b)(1)(i)(B), Proced. & Admin. Regs. (Emphasis added.)

The statute in question and its legislative history are silent as to whether Congress specifically intended that the exhaustion of administrative remedies requirement embody a reasonable extension of the period for assessment. I believe that section 301.7430-1(b)(1)(i)(B), Proced. & Admin. Regs., sets forth a reasonableness standard regarding any request to extend the period for assessment under section 6501(c)(4). I perceive a distinction between the entitlement to an award of litigation costs pursuant to section 7430 and the statute of limitations period prescription within section 6501. An award pursuant to section 7430 is not a fundamental entitlement accorded each taxpayer. Consequently, the scope of section 7430 is necessarily restrictive. In this respect, the exhaustion of administrative remedies requirement is unique to section 7430. I would view respondent's request in light of the particular facts and circumstances to determine whether such request was necessary to provide the Appeals Office with a reasonable time period to consider the tax matter. An additional factor within respondent's regulation is whether the time period requested within the consent to extend the period for assessment was reasonable in light of the particular facts and circumstances. In the instant case, the record establishes that respondent's request was not necessary to provide the Appeals Office a reasonable period for review. Respondent's request was due to dilatory administrative attention in the procurement of the valuation. This fact necessitated additional time to complete the examination. Furthermore, as stated in the majority opinion, the legal theory espoused by respondent to aggregate the transfers of Post common stock for purposes of gift tax valuation had been the subject of previous judicial inquiry. See p. 498-499 *supra.* Here, I would determine that petitioners' refusal to extend the period for assessment was reasonable as respondent's request to extend the period for assessment was not *necessary* to

provide for Appeals Office review but motivated by a desire to extend the examination stage of review.

In sum, my view is that the analysis as to whether a taxpayer is entitled to an award of litigation costs should employ a double-edged inquiry concerning the prevailing party standard of section 7430(c)(2) and the exhaustion of administrative remedies requirement of section 7430(b)(2). Whether a request by respondent that a party extend the period for assessment is necessary to provide the Appeals Office a reasonable period of time to consider the tax matter should be determined from the facts and circumstances of the request. The intent of the exhaustion of administrative remedies request is to impose a limitation to an award of litigation costs upon the taxpayer. The Court should focus upon which party, if any, disabled the stipulation and settlement process at the administrative level. I believe that the request to extend the period for assessment should be a relevant factor in our determination of the exhaustion of administrative remedies requirement. The majority negates any role of the consent to extend the period for assessment and erodes the effectiveness of the administrative appeals process. In this context, I note that Congress enacted section 7430 to "deter abusive actions or overreaching by the Internal Revenue Service" (H. Rept. 97-404, *supra* at 11), and that respondent's regulations are necessarily written by the very party that Congress intended to deter. Nonetheless, the intent of Congress is equally clear that the condition of section 7430(b)(2) is "intended to preserve the role that the administrative appeals process plays in the resolution of tax disputes by requiring taxpayers to pursue such remedies prior to litigation." H. Rept. 97-404, *supra* at 13. The request to extend the period for assessment is not by definition tantamount to the abuse or overreaching by the Internal Revenue Service which Congress intended to deter, otherwise there would be no purpose for the consent provision. Sec. 6501(c)(4). The consent to extend the period for assessment may play a vital role in the resolution of complicated tax matters at the administrative level such as the numerous tax shelter cases currently awaiting our disposition. The majority ignores the second aspect of the

bifurcated congressional intent of section 7430, namely the desire to preserve the administrative appeals process. I believe this has ominous overtones and may precipitate unfavorable results both within and beyond the award of litigation costs.

It is fundamental that this Court should consider congressional empathy regarding the staggering number of petitions comprising our current inventory. Congressional efforts to assist in the management of our caseload are evidenced by the enactment of recent provisions. See secs. 6621(d), 6659, 6661, 6673. Section 7430 should be read and examined correlatively with these penalty provisions if we are to construe and apply correctly the congressional purpose inherent in their concurrent enactment. See Note, "Section 7430 and the Award of Litigation Costs: A Reasonable Position," 39 Tax Law. 769, 772 (1986). In connection with the enactment of section 6621(d), the Conference Committee stated that:

> The conferees believe that, with this amendment, the Congress has given the Tax Court sufficient tools to manage its docket, and that the responsibility for effectively managing that docket and reducing the backlog now lies with the Tax Court. * * * [H. Rept. 98-861 (Conf.) (1984), 1984-3 C.B. (Vol. 2) 1, 239.]

My stated view is that the request to extend the period for assessment should be a relevant consideration in the context of the exhaustion of administrative remedies requirement. The majority opinion obviates any role which the request to extend the period for assessment could have played to resolve tax matters at the administrative level. As stated, Congress has endeavored to allay the problems confronting this Court in the effective management of its caseload. Considering the totality of the legislative enactments above referred to, and the majority's rejection of a facts and circumstances test which I believe is inherent in the majority-obviated regulations, I am apprehensive that we are ignoring a charge endowed by the confidence of Congress in our deliberations, for:

> It is fair to say that in all this Congress expressed a mood. And it expressed its mood not merely by oratory but by legislation. As legislation that mood must be respected, even though it can only serve as a standard for judgment and not as a body of rigid rules assuring

sameness of application. Enforcement of such broad standards implies subtlety of mind and solidity of judgment. But it is not for us to question that Congress may assume such qualities in the federal judiciary. [*Universal Camera Corp. v. Labor Bd.*, 340 U.S. 474, 487 (1951).]

In the context of the exhaustion of administrative remedies requirement, the majority ignores congressional preference for settlement of tax matters at the administrative level. I find troublesome the prospect that a taxpayer may now opt for the preliminary notice of deficiency and file a protest with the appellate section, but if a consent to extend the period for assessment is necessary to provide for Appeals Office review, the taxpayer may compel the issuance of the statutory notice of deficiency. We must now determine that such a taxpayer has complied with the exhaustion of administrative remedies requirement. The elimination of the consent request to extend the period for assessment in context of an award of litigation costs emasculates the vitality of the exhaustion of administrative remedies requirement and designates an unwarranted advantage to the taxpayer in the intended balance of section 7430 between the prevailing party standard and the exhaustion of administrative remedies requirement. The majority has adopted a facile, albeit appealing, determination to invalidate respondent's regulations. Nonetheless, it remains inescapable that the Court must delve into the administrative proceedings to determine whether a taxpayer has exhausted administrative remedies as mandated by section 7430(b)(2) without regard to any reasonable request to extend the period for assessment necessary to provide an Appeals Office review. I am confident that our determination disrupts the counterpoise intended by Congress with the enactment of section 7430(b)(2) and consider the following statement of Justice Frankfurter in *Universal Camera Corp. v. Labor Bd.*, 340 U.S. at 488-489, to be pertinent in that context: "A formula for judicial review of administrative action may afford grounds for certitude but cannot assure certainty of application. Some scope for judicial discretion in applying the formula can be avoided only by falsifying the actual process of judging or by using the formula as an instrument of futile casuistry."

I am concerned that in voiding these regulations we have forsaken judicial discretion for the sake of pure judicial casuistry.

*Thomas J. Phillips* and *Roger C. Minahan,* for the petitioners.
*Sheldon M. Kay* and *Nelson Shafer,* for the respondent.

