T.C. Memo. 1997-576


UNITED STATES TAX COURT


THE MANCHESTER GROUP AND SUBSIDIARIES, FORMERLY TORREY
ENTERPRISES, INC., AND SUBSIDIARIES, FORMERLY TORREY DEVELOPMENT
CORPORATION AND SUBSIDIARIES, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 20509-92.                    Filed December 31, 1997.


J. Clancy Wilson, for petitioners.

William H. Quealy, Jr., and Alice M. Harbutte, for
respondent.


MEMORANDUM OPINION

DAWSON, Judge: This case was assigned to Special Trial
Judge Robert N. Armen, Jr., pursuant to the provisions of section
7443A(b)(4) of the Internal Revenue Code of 1986, as amended, and

Rules 180, 181, and 183.[1]  The Court agrees with and adopts the Opinion of the Special Trial Judge, which is set forth below.

OPINION OF THE SPECIAL TRIAL JUDGE

ARMEN, <u>Special Trial Judge</u>:  This case is before the Court on petitioners' Motion for Leave of Court to File Motion to Vacate or Revise Decision to Seek Litigation Costs Under Code Section 7430 (petitioners' Motion for Leave).

On December 10, 1993, the Court entered a decision in this case pursuant to the agreement of the parties.  Ninety-four days later, on March 14, 1994, the Court filed petitioners' Motion for Leave and lodged two additional motions submitted by petitioners, namely: (1) Motion to Vacate or Revise Decision to Seek Litigation Costs Under Code Section 7430 (petitioners' Motion to Vacate), and (2) Motion for Reasonable Litigation Costs (petitioners' Motion for Litigation Costs).[2]

The issues for decision are as follows:

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2] The Court of Appeals for the Ninth Circuit has held that petitioners' Motion for Leave was timely filed because it was mailed within 90 days after the decision in the case was entered. <u>Manchester Group v. Commissioner</u>, 113 F.3d 1087 (9th Cir. 1997), revg. T.C. Memo. 1994-604.

(1) Whether we should exercise our discretion and grant petitioners' Motion for Leave (and thereby file petitioners' Motion to Vacate); and, if so,

(2) whether we should grant petitioners' Motion to Vacate.[3]

Neither party requested an evidentiary hearing, and the Court concludes that such a hearing is not necessary for the proper disposition of petitioners' Motion for Leave and Motion to Vacate. We therefore decide the matter before us based on the record that has been developed to date.

Petitioners' principal place of business was in San Diego, California, at the time that the petition was filed with the Court.

Background

In June 1992, respondent sent petitioners a notice of deficiency. In the notice, respondent determined the following deficiency and additions to tax in petitioners' consolidated income tax for the taxable year ended March 31, 1986:

| | Additions to tax | | |
| Deficiency | Sec. 6653(a)(1) | Sec. 6653(a)(2) | Sec. 6661(a) |
| $14,458,059 | $722,903 | [1] | $3,614,515 |

[1] 50% of the interest due on $14,458,059.

---

[3] Although only petitioner's Motion for Leave is presently before the Court, petitioners' Motion to Vacate is essentially identical to petitioners' Motion for Leave.

Respondent also determined in the notice that petitioners were liable for additional interest under section 6621(c) by virtue of a substantial underpayment of tax attributable to a tax-motivated transaction.

The deficiency in income was essentially attributable to respondent's determination that petitioners derived substantial gain in a complex transaction involving the disposition of an indirect interest in an office building.

In September 1992, petitioners filed a timely petition contesting respondent's determinations. At the same time, petitioners designated San Diego, California, as the place of trial.

The petition was subscribed by J. Clancy Wilson, the attorney who has continued to represent petitioners throughout these proceedings. Petitioners' counsel was formerly an attorney for the Tax Division of the U.S. Department of Justice. He is also certified by the State of California as a specialist in taxation law and is an experienced tax litigator.

In November 1992, an answer was filed by respondent's District Counsel Office in San Diego. Shortly thereafter, in December 1992, the case was referred to respondent's Appeals Office in San Diego for settlement consideration. Because of the amounts in controversy and the complexity of the issues, the case was assigned to a senior Appeals officer.

On September 23, 1993, while negotiations between the parties were ongoing, the Court served the parties with notice that this case would be called for trial at the Court's trial session scheduled to commence on February 28, 1994, in San Diego.

In late September or early October 1993, respondent's Appeals Office, after a period of consultation with respondent's attorneys in both San Diego and Washington, D.C., decided to concede the deficiency, additions to tax, and additional interest as determined in the notice of deficiency and so notified petitioners' counsel. Sometime thereafter, respondent sent a settlement document to petitioners' counsel for his review and signature.

The settlement document was a standard stipulated decision consisting of a form of decision, which embodied respondent's concession of the deficiency, additions to tax, and additional interest, and a stipulation to be signed by counsel for the parties agreeing to entry of the form of decision by the Court. The stipulated decision was silent regarding litigation costs.

Petitioners' counsel reviewed the stipulated decision and revised its language.[4] In revising the language, petitioners' counsel did not introduce the issue of litigation costs.

---

[4] The nature of the revision made by petitioners' counsel appears to relate to the description of the additions to tax and additional interest addressed in the stipulated decision.

Petitioners' counsel executed the stipulated decision in November 1993. Nevertheless, petitioners' counsel did not intend the stipulated decision to be conclusive as to litigation costs.

In December 1993, respondent's counsel executed the stipulated decision and forwarded it to the Court.

On December 9, 1993, the Court received the stipulated decision. The portion consisting of the form of decision recited that "Pursuant to the agreement of the parties in this case", petitioners were not liable for any deficiency, additions to tax, or additional interest for the taxable year in issue. The portion consisting of the stipulation recited that "It is hereby stipulated that the Court may enter the foregoing decision in the above-entitled case" and was executed by counsel for the parties. As previously indicated, the stipulated decision was silent regarding litigation costs.

On December 10, 1993, the Court executed the form of decision and formally entered decision pursuant to the agreement of the parties (the Decision). Also on December 10, 1993, the Court served conformed copies of the Decision on the parties. Thereafter, the Court struck petitioners' case from the February 28, 1994, trial session in San Diego.

In January 1994, respondent closed the administrative and litigation files related to this case and discarded certain

handwritten notes and other such informal materials that had been generated prior to the entry of the Decision.

On March 9, 1994, the 89th day after the Decision was entered, petitioners mailed their Motion for Leave, Motion to Vacate, and Motion for Litigation Costs to the Court. All three motions were received by the Court on March 14, 1994, the 94th day after the Decision was entered. On the same day, March 14, 1994, the Court filed petitioners' Motion for Leave and lodged petitioners' Motion to Vacate and petitioners' Motion for Litigation Costs.

Prior to March 9, 1994, petitioners had not disclosed their intention of seeking litigation costs. However, at the time that he executed the stipulated decision in November 1993, petitioners' counsel fully contemplated that petitioners would seek litigation costs. Nevertheless, petitioners' counsel did not mail petitioners' three motions to the Court until March 9, 1994. Petitioners' counsel intentionally delayed submitting the motions for two reasons. First, petitioners' counsel was concerned that claiming litigation costs might cause respondent to withhold concession of the amounts in issue in the present case. Second, petitioners' counsel was concerned that claiming litigation costs might negatively influence the resolution of another dispute between petitioners and respondent that was also

- 8 -

under consideration by respondent's Appeals Office in San Diego.[5] Therefore, in an effort to "avoid burning bridges", petitioners' counsel intentionally delayed submitting a motion for litigation costs until the eve of the expiration of the 90-day period that typically leads to the finality of a stipulated decision.  See secs. 7481(a)(1), 7483.

Discussion

    A. <u>Time and Manner of Making a Claim for Litigation Costs</u>

    Petitioners advance arguments in support of their view that they are entitled, without first filing a motion to vacate decision, to file a motion for litigation costs at any time before the decision becomes final.  Thus, petitioners contend that we must consider the merits of their Motion for Litigation Costs without regard to their Motion for Leave.  We disagree for the reasons discussed in our prior opinion.  <u>Manchester Group v. Commissioner</u>, T.C. Memo. 1994-604, revd. on another issue 113 F.3d 1087 (9th Cir. 1997).  We hold, as before, that we will not consider the merits of petitioners' Motion for Litigation Costs

---

    [5] The other dispute apparently involved another taxable year in respect of which a 30-day letter had been issued.

unless and until we first grant petitioners' Motion for Leave and then grant petitioners' Motion to Vacate.[6]

The reasoning that supports our holding is set forth in our prior opinion and will not be repeated herein. See <u>Manchester Group v. Commissioner</u>, T.C. Memo. 1994-604. However, we make mention of several cases that petitioners cite in support of their argument that a motion for litigation costs may be filed at any time before a decision becomes final. We do not think that these cases support such proposition. In each case, it appears that a motion to vacate the decision, or for litigation costs, was mailed or delivered to the Court within 30 days after the entry of the decision, and in no case was there anything to suggest that the taxpayer intentionally delayed submitting an appropriate motion. See <u>Comer v. Commissioner</u>, 958 F.2d 136 (6th Cir. 1992); <u>Cassuto v. Commissioner</u>, 93 T.C. 256 (1989), affd. in part, revd. in part and remanded 936 F.2d 736 (2d Cir. 1991);

---

[6] In <u>Manchester Group v. Commissioner</u>, 113 F.3d 1087, 1089 (9th Cir. 1997), the Court of Appeals did not take issue with our holding that petitioners' Motion for Litigation Costs was not separately reviewable; rather, the Court of Appeals reversed our dismissal for lack of jurisdiction and remanded this case "to decide the motion for leave on the merits." In reaching its conclusion, the Court of Appeals appeared to agree that petitioners' Motion to Vacate cannot be considered without first granting petitioners' Motion for Leave. Thus:

> "As the Tax Court held, the motion to vacate could not be considered without first granting the motion for leave because more than thirty days had passed." [<u>Id.</u> at 1088.]

Minahan v. Commissioner, 88 T.C. 492 (1987); Bouterie v. Commissioner, T.C. Memo. 1993-510, revd. and remanded 36 F.3d 1361 (5th Cir. 1994).

B. The Interests of Justice

In the alternative to their argument that their Motion for Litigation Costs is separately reviewable, petitioners argue that we should grant their Motion for Leave. In this regard, petitioners argue that "the inadvertent actions of petitioners' counsel should be viewed in light of the lack of specific guidance in the Tax Court Rules as to when a party should move for litigation costs." Therefore, according to petitioners, justice would be served by granting their Motion for Leave. We disagree with both the premise and the conclusion of petitioners' argument.

Whether to grant or deny a motion for leave is a matter that lies within the sound discretion of the Court. Heim v. Commissioner, 872 F.2d 245, 246 (8th Cir. 1989), affg. T.C. Memo. 1987-1; Estate of Egger v. Commissioner, 92 T.C. 1079, 1083 (1989). In deciding what action to take,

> We are guided primarily by whether it would be in the
> interest of justice to vacate the prior decision. But,
> we also recognize that litigation must end at sometime.
> [Estate of Egger v. Commissioner, supra; citation
> omitted.]

See also Commissioner v. Estate of Long, 304 F.2d 136, 144 (9th Cir. 1962).

In the present case, justice does not demand that we grant petitioners' Motion for Leave.

First, we disagree with the assertion that the actions of petitioners' counsel were "inadvertent". Rather, the record clearly demonstrates that petitioners' counsel intentionally delayed submitting petitioners' various motions until the eve of the expiration of the 90-day period that typically leads to the finality of a stipulated decision. Petitioners' counsel intentionally delayed submitting the motions for what he regarded as strategic reasons. Thus, it cannot be said that the actions of petitioners' counsel were "inadvertent".

Second, we disagree that our Rules lack specific guidance regarding the time when a claim for litigation costs should be made. We have previously discussed at length the provisions of our Rules regarding the time and manner of making a claim for litigation costs, see Manchester Group v. Commissioner, T.C. Memo. 1994-604, and we will not repeat that discussion herein.[7] Suffice it to say that petitioners' counsel should not have waited to file the instant motions until the 89th day after the entry of the stipulated decision if he did not intend it to be conclusive as to litigation costs. Rather, when respondent

---

[7] Cf. Abatti v. Commissioner, 859 F.2d 115, 119 (9th Cir. 1988) (holding that a taxpayer's misunderstanding of the Tax Court's Rules is insufficient to overcome the doctrine of finality).

mailed the settlement document to petitioners' counsel for his review and signature, if not sooner, petitioners' counsel should have alerted respondent to petitioners' claim for litigation costs. At that point, either the proposed stipulated decision could have been revised to reflect petitioners' entitlement to litigation costs, see Rule 231(a)(1), or the parties could have executed a stipulation of settled issues, see Rule 231(a)(2)(C), (b)(3), and (c), thereby preserving the issue of litigation costs for subsequent disposition by the Court. Petitioners could then have filed their Motion for Litigation Costs, accompanied by the stipulation of settled issues. See Rule 231(c). Alternatively, petitioners' counsel, having executed the stipulated decision in November 1993 but not intending that it be conclusive as to litigation costs, could have filed the Motion to Vacate within the 30-day period provided by Rule 162. See Rule 230(a). However, petitioners' counsel did not pursue either of these alternatives because they did not comport with his litigation strategy.

### C. Public Policy

Petitioners assert that they incurred substantial costs in defending against what they regard as respondent's unreasonable position. Petitioners then argue that because section 7430 was enacted by Congress to deter the Commissioner from taking

unreasonable positions, "public policy" would be served by granting their Motion for Leave.

We agree that section 7430 was enacted by Congress to deter unreasonable conduct by the Commissioner.  Indeed, the legislative history of section 7430 sets forth some guidelines for determining whether the Commissioner's conduct was unreasonable:

> The committee intends that the determination by the court on this issue is to be made on the basis of the facts and legal precedents relating to the case as revealed in the record.  Other factors the committee believes might be taken into account in making this determination include, (1) whether the government used the costs and expenses of litigation against its position to extract concessions from the taxpayer that were not justified under the circumstances of the case, (2) whether the government pursued the litigation against the taxpayer for purposes of harassment or embarrassment, or out of political motivation, and (3) such other factors as the court finds relevant.  * * * [H. Rept. 97-404, at 12 (1981).]

Petitioners' counsel intentionally delayed submitting petitioners' three motions because of his concern that a claim for litigation costs might:  (1) Cause respondent to withhold concession of the amounts in issue in the present case and might (2) negatively influence the resolution of a dispute in a collateral matter.  Neither of these reasons constitutes good cause, and in the absence of good cause, we are unwilling to allow petitioners to ignore the orderly procedures of this Court as embodied in Rule 162.  In short, the "public policy" of

section 7430, to which we give expression through our Rules, simply does not justify a waiver of Rule 162 in this instance.[8]

D. Impact on the Judicial Process

We think that the Court has an interest in this matter that petitioners do not recognize.

The Court has an interest in fostering respect for the judicial process and accomplishing orderly disposition of its workload. In part, the Court seeks to foster respect for the judicial process through the evenhanded enforcement of its Rules, which are designed to secure the just, speedy, and inexpensive determination of every case. See Rule 1(b); see also sec. 7453.[9] If a party, in the pursuit of its own agenda, is permitted to disregard the procedures established by this Court, unfairness to others and disruption of the Court's processes occur. See Estate

---

[8] We note that sec. 7430(b)(4) precludes an award of litigation costs with respect to any portion of the court proceeding during which the prevailing party has unreasonably protracted such proceeding. It is apparent, therefore, that the statute itself does not excuse intentional delay by a taxpayer.

[9] Cf. Commissioner v. Estate of Long, 304 F.2d 136, 144 (9th Cir. 1962) (quoting and adopting Commissioner v. Erie Forge Co., 167 F.2d 71, 76 (3d Cir. 1948): "The Tax Court is authorized to determine whether its rules are complied with and where its decision of such questions is not shown to be clearly wrong it should not be disturbed.")

of Quirk v. Commissioner, 60 T.C. 520, 521 (1973).[10]  This is particularly true if the party has disregarded those procedures intentionally.

As we have already stated, petitioners' counsel should not have executed the stipulated decision and waited to file the instant motions until 89 days after its entry if he did not intend the stipulated decision to be conclusive as to litigation costs.  However, by so doing, he signaled to the Court, as well as respondent, that all of the issues in the case, specifically including the issue of litigation costs, had been resolved by the parties.  As a consequence, the Court struck this case from the February 28, 1994, trial session in San Diego.  In contrast, if a stipulation of settled issues had been filed, the Court would have known that the issue of litigation costs remained in the case and might have been able to entertain that issue at the San Diego trial session.  Regardless, the fact remains that the integrity of the Court's Rules was compromised through

---

[10]  "The Rules of this Court were adopted for serious reasons and are not to be taken lightly.  Time limitations, for example, are necessary to ensure the speedy and efficient disposition of cases so that evidence and witnesses will not grow stale.  Litigation before this Court would be significantly slowed if we routinely countenanced violations of the time limitations set by our Rules.  And, of course, respondent must be held to the same strict observance of the Rules that we require of taxpayers."  Estate of Quirk v. Commissioner, 60 T.C. 520, 521 (1973).

petitioners' stratagem of "buying time" by intentionally waiting until the 11th hour to submit the Motion for Litigation Costs.

E. Conclusion

Whether to grant or deny a motion for leave is a matter that lies within the sound discretion of the Court. In ruling on such a motion, we are guided primarily by whether it would be in the interest of justice to vacate the prior decision.

Justice does not require us to vacate the prior decision in this case. Petitioners' counsel intentionally delayed mailing the Motion for Leave to the Court until the 89th day after the Decision had been entered. Significantly, there was no good cause for such delay. Further, respect for the judicial system is compromised when a party, in pursuit of its own litigation strategy, is permitted to disregard the procedures established by this Court for the orderly disposition of disputes.

In view of the foregoing, we will deny petitioners' Motion for Leave. Accordingly, we need not address petitioners' Motion to Vacate.

To reflect the foregoing,

An appropriate order will

be issued.