REGINA LOMANNO, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Lomanno v. Commissioner
Docket No. 9275-92
United States Tax Court
T.C. Memo 1994-426; 1994 Tax Ct. Memo LEXIS 434; 68 T.C.M. (CCH) 565; August 24, 1994, Filed *434 For petitioner: Bruce W. McClain. For respondent: Marc A. Shapiro. COUVILLION
COUVILLION
MEMORANDUM OPINION COUVILLION, Special Trial Judge: This matter is before the Court on petitioner's motion for an award of attorney's fees and litigation costs pursuant to section 7430[1] and Rule 231. In a notice of deficiency addressed to petitioner and her former husband, Frank Lomanno (Mr. Lomanno), respondent determined deficiencies in and additions to their Federal income taxes as follows: Year
Deficiency
Sec. 6651(a)(1) Sec. 6653(a)(1) 1987
$ 2,094
$ 281
-- 1988
2,933
895
$ 498
*435 Mr. Lomanno did not petition the Court. Petitioner's case came to trial, and, at the conclusion of the trial, the Court rendered oral findings of fact and opinion in favor of petitioner on the sole issue: whether the returns filed by Mr. Lomanno for the years in question, which purported to be joint returns, and on which Mr. Lomanno signed petitioner's name, constituted joint returns as to petitioner. In the oral opinion, the court concluded that petitioner did not intend or tacitly consent to the filing of joint income tax returns with Mr. Lomanno for the years at issue; therefore, petitioner was not liable for the deficiencies or additions to tax as determined by respondent. [2]
*436 Following the trial, petitioner filed the subject motion for attorney's fees and litigation costs. Respondent thereafter filed a response. Petitioner subsequently filed a supplement to the original motion, pursuant to Rule 232(d), relating to the amount of attorney's fees claimed. The Court concludes that a hearing is not necessary for the proper consideration and disposition of this motion. [3]Rule 232(a)(3). Petitioner resided in University Heights, Ohio, at the time her petition was filed. *437 Petitioner and Mr. Lomanno were married in 1982. Mr. Lomanno graduated from college in 1980 with an accounting degree. He passed the Certified Public Accountant examination but never received his license as a C.P.A. because of the personal problems described later in this opinion. During the years in question, Mr. Lomanno was employed as an accountant with the firm of Miller, Miller & Haney, Inc., at Cleveland, Ohio. Petitioner is a college graduate with a bachelor's degree in dietetics and nutrition and a master's degree in nutrition. Petitioner began work in 1986 as a dietetic director at Kaiser Hospitals (Kaiser). When Kaiser later ceased operations, she worked for a nursing home as Director of Dieticians. In 1987, petitioner began working as a sales representative for Practor-Care, Inc. In her sales position, petitioner marketed nutrition and food computer software to large institutions in the States of Ohio, Michigan, Kentucky, and part of Pennsylvania. For a period of time, petitioner traveled for business purposes and was away from home during 3 weeks of the month. Petitioner became pregnant sometime in 1987. She stopped working in August of 1987 due to a difficult *438 pregnancy that required hospitalization. After the birth of their first child in 1987, petitioner never returned to work. Petitioner's total earnings in 1987 were $ 9,807.75. The withholding taxes on these earnings were sufficient to pay the taxes due on such income. Petitioner had no taxable income for 1988. For the first 4 years of petitioner's marriage to Mr. Lomanno, from 1982 to 1985, joint Federal income tax returns were timely filed by them. The returns were prepared by Mr. Lomanno. Petitioner always signed the returns after a review of the return. After 1985, however, the circumstances relating to the preparation and filing of the Federal income tax returns drastically changed due to Mr. Lomanno's involvement in an embezzlement scheme in which he embezzled over $ 60,000 during 1987 and 1988 of his employer's clients' monies as well as government checks. Mr. Lomanno used these proceeds to finance "obsessive sexual philandering" involving prostitutes. Mr. Lomanno did not prepare income tax returns as he customarily did in prior years. When petitioner inquired about the returns, she was advised that he had obtained extensions to file, and he assured her that he would *439 take care of the returns. Beginning in March or April of 1985, Mr. Lomanno began seeing a prostitute approximately once every 2 to 3 weeks. As time passed, Mr. Lomanno's activities increased such that he was seeing several a week and, at times, more than one prostitute a day. From 1985 to 1987, Mr. Lomanno spent approximately $ 60,000 to $ 70,000 on these sexual activities. The funds to finance these sexual endeavors all came from the embezzled funds of the accounting firm where he was employed and its clients. Mr. Lomanno concealed from petitioner both his embezzlement activities and his sexually deviant conduct. In October 1987, petitioner first discovered Mr. Lomanno's unfaithfulness when he admitted to one act of deviance. Mr. Lomanno and petitioner consulted a marriage counselor; however, Mr. Lomanno never disclosed in these sessions the extent of his sexual misconduct nor any information about his embezzlement activities. Sometime near March 1989, a problem developed at the accounting firm where Mr. Lomanno was employed. One of the partners at the firm came under investigation by agents of the Criminal Investigation Division (CID) of the Internal Revenue Service (IRS) *440 for certain irregularities of that partner. That investigation resulted in the dissolution of Mr. Lomanno's accounting firm. The activity of the partner who was under investigation was totally unrelated to the embezzlement activities of Mr. Lomanno. However, Mr. Lomanno became fearful that the investigation of this partner would lead to the discovery of Mr. Lomanno's embezzlement activities. Mr. Lomanno decided that he should seek legal advice at this point. He contacted a criminal attorney who suggested that the matter be taken up with the office of the U.S. Attorney. On September 22, 1989, Mr. Lomanno and his attorney met with an Assistant U.S. Attorney, a CID agent, and a U.S. Secret Service agent. Mr. Lomanno cooperated with the government authorities and confessed to all of his wrong-doing with the hope that he would not end up in a Federal prison. The government agents offered Mr. Lomanno a plea bargain, which was conditioned on his filing Federal income tax returns for 1986, 1987, and 1988. The returns for these years had never been filed because Mr. Lomanno did not want to report the embezzlement income, and he preferred not to file rather than file false or fraudulent *441 returns. Petitioner had previously questioned Mr. Lomanno on numerous occasions about why she had not been presented with tax returns to review for these years and was told by Mr. Lomanno that he had obtained extensions. Mr. Lomanno did not tell petitioner about hiring an attorney or his confession to the government agents. He wanted to keep from her knowledge of his embezzling and philandering activities as long as possible. As he had agreed as part of the plea bargain, Mr. Lomanno, on his own, prepared joint Federal income tax returns for 1986, 1987, and 1988. The embezzled income was reported as "other income" on the returns, $ 45,007 for 1987 and $ 15,005 for 1988. The three returns were prepared by Mr. Lomanno, in 1 day, at a local library. He did not inform petitioner that he had prepared these returns, or that these returns would be filed. In December 1989, Mr. Lomanno attended a previously scheduled meeting with IRS agents for the purpose of filing the returns. The returns were presented to the agents, unsigned. The returns were not accepted because they were unsigned. Mr. Lomanno intentionally presented the returns unsigned, hoping that the agents would not detect *442 the omitted signatures and, several months later, by letter, the IRS would request signatures to confirm the returns. In this way, petitioner might have signed the letter and, by not seeing the returns, would not have detected or been made aware of the embezzled income on the 1987 and 1988 returns. The IRS agents, however, caught the error, and the returns were given back to Mr. Lomanno with instructions that the returns had to be signed. He later signed petitioner's name on the three returns, and, at another meeting with IRS agents, the returns were accepted. The returns were stamped as filed by the IRS Examination Division at Youngstown, Ohio, on January 4, 1990. The taxes shown on these returns were $ 7,707, $ 15,815, and $ 7,018, respectively, for 1986, 1987, and 1988. After credit for withholdings and prepayments, the amounts unpaid were $ 3,755, $ 12,283, and $ 6,476, respectively, for each year. Mr. Lomanno did not make payment of these amounts. As noted, Mr. Lomanno prepared these returns without petitioner's knowledge. In reporting her wage and salary income on the 1986 and 1987 returns, Mr. Lomanno did not solicit from petitioner her IRS W-2 forms for those years *443 to avoid questions from her about the returns. Instead, Mr. Lomanno obtained the amount of petitioner's salary for these 2 years from one of the IRS agents. In February 1990, Mr. Lomanno entered a plea of guilty to one count of embezzlement in Federal District Court. He was sentenced to 3 years' probation and was ordered to make restitution of the $ 60,000 embezzled income. Mr. Lomanno told petitioner of his guilty plea but advised her that it was for falsifying someone else's tax return. Petitioner first learned of her husband's embezzlement in April 1990, when a probation officer came to their home to prepare a presentencing report. Petitioner, however, was not informed as to the amount of embezzled funds or the uses to which it was applied. After the officer left, Mr. Lomanno told petitioner he only stole a "couple of thousand dollars", and that his father was lending him the money to pay it back. Petitioner first learned that returns had been filed for the years 1986 to 1988 when a letter dated January 4, 1991, almost a year later, was received from an IRS revenue agent, Joe Fabrizio (Mr. Fabrizio), stating that the returns for the 3 years were being audited. The letter *444 was handwritten on IRS Form 4564, Information Document Request, and listed five areas in which documents or other information was requested. These areas dealt with information to substantiate business use of an automobile, depreciation and office in the home expenses, a Schedule C activity of Mr. Lomanno, and Schedule A interest expenses. The letter also requested a copy of the 1989 Form 1040. None of the information requested dealt with the embezzled income, nor was there any mention of the embezzled income on this letter. Mr. Fabrizio met with petitioner and Mr. Lomanno on February 6, 1991. Although there is a dispute between petitioner and respondent as to whether petitioner and Mr. Lomanno came to the meeting together, the Court finds that Mr. Lomanno arranged to meet with Mr. Fabrizio before petitioner arrived to make sure that, if Mr. Fabrizio brought up the embezzled income, it would be discussed outside the presence of petitioner. Petitioner came into the meeting shortly thereafter, and the matters that were on the January 4, 1991, audit letter were taken up. At trial, Mr. Fabrizio denied that he met separately with Mr. Lomanno; however, the activity record he maintained, *445 which was introduced into evidence, indicates a scheduled 9:30 a.m. meeting with Mr. Lomanno on February 6, 1991, and a 10:00 a.m. meeting on the same date with petitioner. This evidence corroborates the testimony of petitioner and Mr. Lomanno that Mr. Lomanno met with Mr. Fabrizio prior to petitioner's arrival at the meeting. Mr. Fabrizio admitted that the embezzled income was not an issue in the audit, and the only information he sought and discussed on that subject was "background information". He accepted the $ 45,007 and $ 15,005 amounts reported by Mr. Lomanno as embezzled income on the 1987 and 1988 returns. The Court is satisfied that, if the embezzled income came up at this conference in the presence of petitioner, it was only in a passing reference, and it was of no significance to petitioner because, at that time, she was not aware that embezzled monies constituted taxable income. There is no evidence to indicate that, at this conference, petitioner was informed or made aware that embezzlement proceeds constituted taxable income, nor was there any discussion about the authenticity of petitioner's signatures on the returns. Although the record does not show what adjustments *446 Mr. Fabrizio made on February 6, 1991, the IRS, on July 22, 1991, issued a "30-day letter" to petitioner and Mr. Lomanno. Petitioner does not remember receiving or seeing this letter, and it was not introduced into evidence at trial. She and Mr. Lomanno were divorced in 1991. At any rate, certain adjustments were made to the 1987 and 1988 returns, based upon the conference on February 6, 1991, relating solely to the matters discussed at the conference. Neither petitioner nor Mr. Lomanno took further administrative steps to protest the proposed adjustments. The notice of deficiency was issued to petitioner and Mr. Lomanno on February 4, 1992, involving only the 1987 and 1988 tax years. Prior to receipt of the notice of deficiency, on September 19, 1991, petitioner received a letter from her bank informing her that the bank had been served with a Notice of Levy from the IRS in the amount of $ 59,135.18 on petitioner's bank account. The levy was based on the assessment of the unpaid taxes for 1986, 1987, and 1988 shown as due and owing on the returns filed by Mr. Lomanno. Petitioner then sought the advice of counsel, Bruce W. McClain (Mr. McClain), who began his representation *447 of petitioner and who has continued to represent her through these proceedings. On September 25, 1991, Mr. McClain filed with the IRS collection division at Cleveland, Ohio, a Power of Attorney for the representation of petitioner. In an attached letter, he requested that the IRS "Please contact the undersigned immediately regarding this account." He received no reply to this letter. On October 2, 1991, due to the collection efforts against petitioner for 1986, 1987, and 1988, Mr. McClain again wrote the IRS in Cleveland, Ohio, directed to a Problem Resolution Officer, stating: I believe I have a very strong claim that [petitioner] should not be liable for any amounts due for these years, under the Innocent Spouse Rule. In fact, she had nothing to do with the underlying problems involving these tax returns. Frank Lomanno freely admits that [petitioner] did not even sign these tax returns. He himself signed her name to the tax returns. * * * I am attempting to have this case reopened so that the personal liability of [petitioner] can be determined. * * * For the reasons stated above, I would request that the Problems Resolution Officer take up this case and attempt *448 to get us back into a forum where we can fairly resolve the matter of [petitioner's] individual tax liability. She has never had a real chance to be represented regarding this issue.
Attached to the letter was Form 911, Application for Taxpayer Assistance Order to Relieve Hardship. Again, on this form, Mr. McClain stated the facts he believed to be relevant, requesting that the case be referred to the examination division and explained that "[petitioner] had no knowledge of the returns as filed in the years in question, and did not in fact sign these. We are attempting to get time to argue that she is not liable for tax". Mr. McClain received no reply to his written requests for an administrative review of petitioner's tax liability for the 3 years in question. Petitioner's counsel also made oral requests for an administrative review to representatives of respondent on October 18, 1991, and October 25, 1991. During the October 18th telephone conversation, Mr. McClain was advised that collection efforts against petitioner were suspended, and that a meeting would be arranged regarding what amount was owed. There is no evidence that a meeting was ever held. On February 4, *449 1992, the notice of deficiency was issued to petitioner and Mr. Lomanno. A copy was mailed to Mr. McClain. Petitioner filed a petition with this Court on May 4, 1992. In the petition, petitioner claimed she was not liable for the deficiency because she was an innocent spouse, or, in the alternative, she did not file joint returns for 1987 and 1988. An answer was filed by respondent on June 22, 1992, in which petitioners' factual allegations were denied or denied for lack of sufficient information. On June 24, 1992, petitioner received a letter from Denise Neidermeyer (Ms. Neidermeyer), an IRS appeals officer, stating that counsel for respondent had transferred the administrative files and jurisdiction of petitioner's case to the Office of Appeals in Cleveland for consideration. The letter to petitioner's counsel suggested a meeting would be arranged for a later date. On November 17, 1992, Mr. McClain sent the following information to Ms. Neidermeyer: (1) A letter firmly asserting petitioner's position that she did not file and did not intend to file joint returns for the years at issue; (2) a handwriting analysis and report by a certified handwriting expert that the signature *450 appearing on the purported joint returns was not that of petitioner; and (3) income tax returns for petitioner on a filing basis of "married, filing separately" reflecting a refund for 1987 and no tax due for 1988. In addition, petitioner's willingness to submit to a handwriting examination by respondent's own expert was communicated. Furthermore, the letter stated that: if it would help to satisfy you regarding her veracity, I would be willing to arrange an appeals conference at which [petitioner] herself would be present and at which you would have the opportunity to question her directly. I think you would find her to be honest, intelligent, and believable.
Despite this express offer, respondent never chose to interview petitioner prior to trial. On January 1, 1993, Mr. McClain sent Ms. Neidermeyer an affidavit of Mr. Lomanno attesting to the fact that he, Mr. Lomanno, had signed petitioner's name to the income tax returns in question. Throughout 1993, there were communications between Mr. McClain, Ms. Neidermeyer, and counsel for respondent. No settlement was reached, and the case proceeded to trial on December 15, 1993. As noted earlier, after the trial ended, *451 the Court made oral findings of fact and opinion, holding that petitioner did not file or intend or tacitly consent to the filing of joint Federal income tax returns for 1987 and 1988. Section 7430(a) provides that, in the case of any administrative or court proceeding brought by or against the United States in connection with the determination, collection, or refund of any tax, interest, or penalty, the prevailing party may be awarded a judgment for (1) reasonable administrative costs incurred in connection with such administrative proceedings within the IRS, and (2) reasonable litigation costs incurred in connection with such proceeding. Petitioner's motion in this case seeks attorney's fees and litigation costs incurred after November 17, 1992, the date respondent was supplied with facts and evidence supporting petitioner's position that she did not file joint returns for 1987 and 1988, and the date petitioner submitted her own returns as married, filing separate, for 1987 and 1988. To obtain an award for administrative and litigation costs, the taxpayer (1) must have exhausted all administrative remedies available, (2) must not have unreasonably protracted the proceedings, *452 (3) must satisfy the statutory definition of a prevailing party as defined in section 7430(c)(4)(A)(iii), and (4) must show that the costs claimed are reasonable. Sec. 7430(b) and (c). The taxpayer must establish all of the above elements in order to recover an award. Rule 232(e); Minahan v. Commissioner, 88 T.C. 492, 497 (1987). To be considered a prevailing party within the definition of section 7430(c)(4), the taxpayer must show that (1) the position of the United States was not substantially justified, [4] (2) the taxpayer prevailed with respect to the amount in controversy or with respect to the most significant issue(s), and (3) the taxpayer satisfies the net worth requirement. *453 Respondent agrees that petitioner substantially prevailed with respect to the amounts in controversy for the years at issue, and that petitioner met the net worth requirements of section 7430(c)(4)(A)(iii). Respondent agrees that petitioner did not unreasonably protract any of the proceedings; however, respondent denies that petitioner exhausted the administrative remedies available to her within the IRS. In addition, respondent objects to the motion for costs on the basis that respondent's position was substantially justified and, in the alternative, that some of the costs claimed are not allowable. The "position of the United States" for purposes of litigation costs refers to the position of the United States in a judicial proceeding. Sec. 7430(c)(7)(A). A judicial proceeding in this Court is commenced with the filing of a petition. Rule 20(a). Generally, respondent initially takes a position on the date the answer in response to the petition is filed. Huffman v. Commissioner, 978 F.2d 1139, 1148 (9th Cir. 1992), affg. in part, revg. in part on other grounds, and remanding T.C. Memo. 1991-144; Han v. Commissioner, T.C. Memo. 1993-386. *454 In this case, the petition was filed on May 4, 1992. Respondent's answer was filed on June 22, 1992. Thus, respondent's position with respect to litigation costs is considered for the time period beginning June 22, 1992. However, in her motion, petitioner seeks litigation costs only for the period commencing November 17, 1992. Whether or not respondent's position is substantially justified turns on a finding of reasonableness, based upon all the facts and circumstances, as well as legal precedents relating to the case. Coastal Petroleum Refiners v. Commissioner, 94 T.C. 685, 694-695 (1990); Sher v. Commissioner, 89 T.C. 79 (1987), affd. 861 F.2d 131 (5th Cir. 1988); DeVenney v. Commissioner, 85 T.C. 927, 930 (1985). For a position to be substantially justified, there must be "substantial evidence" to support it. Pierce v. Underwood, 487 U.S. 552 (1988). The Court must consider the basis for respondent's legal position and the manner in which the position was maintained. Wasie v. Commissioner, 86 T.C. 962, 969 (1986). *455 The fact that respondent eventually loses or concedes the case is not sufficient to establish that the positions taken were unreasonable. Sokol v. Commissioner, 92 T.C. 760, 767 (1989); Vanderpol v. Commissioner, 91 T.C. 367, 370 (1988); Wasie v. Commissioner, supra.The issue is whether respondent had a reasonable basis in both law and fact. Estate of Wall v. Commissioner, 102 T.C. 391, 393 (1994). The determination of the reasonableness of respondent's position is based on all the facts and circumstances. Don Casey Co. v. Commissioner, 87 T.C. 847, 858 (1986). At the time respondent's answer was filed, on June 22, 1992, respondent's position was that the three returns filed on January 4, 1990, were joint returns of petitioner and Mr. Lomanno, and, therefore, petitioner's liability was joint and several for all taxes shown as due on the returns and the additional deficiencies and additions to tax determined by respondent. At the time of trial, respondent stipulated that petitioner did not sign the returns; however, *456 respondent maintained that petitioner intended or tacitly consented to the filing of the joint returns for 1987 and 1988 by her husband, Mr. Lomanno. Section 6013(a) provides, with certain exceptions not relevant here, that a husband and wife may file a joint return notwithstanding that one of the spouses has no gross income or deductions. Generally, a joint return must be signed by both spouses. Sec. 1.6013-1(a)(2), Income Tax Regs. However, the failure of one spouse to sign a return will not preclude its treatment as a joint return where both spouses intended to file the return as a joint return. Whether the nonsigning spouse intended to file a joint return is a question of fact. Estate of Campbell v. Commissioner, 56 T.C. 1 (1971); Federbush v. Commissioner, 34 T.C. 740 (1960), affd. per curiam 325 F.2d 1 (2d Cir. 1963); Heim v. Commissioner, 27 T.C. 270 (1956), affd. 251 F.2d 44 (8th Cir. 1958). The courts have considered various factors in determining whether a nonsigning spouse intended to file a joint return; whether the returns *457 were prepared pursuant to an established practice of preparing and filing joint returns; whether the nonsigning spouse failed to object to the filing of a joint return; whether an affirmative act was taken indicating an intention to file other than jointly; whether one spouse entirely relied on the other spouse to file returns; whether the spouse examined returns presented for a signature; whether separate returns were filed; whether the returns included the income and deductions of the nonsigning spouse; and whether the nonsigning spouse was aware of the contents of the purported joint returns. Estate of Campbell v. Commissioner, supra at 12-13; Howell v. Commissioner, 10 T.C. 859 (1948), affd. per curiam 175 F.2d 240 (6th Cir. 1949); Boyle v. Commissioner, T.C. Memo. 1994-294; Evans v. Commissioner, T.C. Memo. 1982-700; Crew v. Commissioner, T.C. Memo. 1982-535. Intent is a factual question; however, respondent cannot escape an award of litigation costs simply because the issue presents a question *458 of fact. Minnahan v. Commissioner, 88 T.C. at 500-502; Frisch v. Commissioner, 87 T.C. 838 (1986); Williford v. Commissioner, T.C. Memo. 1994-135. Respondent here was not pursuing this litigation to establish any significant principle of tax law. Don Casey Co. v. Commissioner, supra at 862. Moreover, since this case is appealable to the U.S. Court of Appeals for the Sixth Circuit, the Court finds particularly relevant language in Shea v. Commissioner, 780 F.2d 561 (6th Cir. 1986), affg. in part, revg. in part, and remanding T.C. Memo. 1984-310. As to the issue of determining intent, the court in the Shea case stated that "the focus should not be on petitioner's intent to file any joint return, but whether she intended to file and be bound by the particular return in question." Id. at 567. There are numerous facts in this case that point to a conclusion that petitioner did not intend or tacitly consent to the filing of joint income tax returns for 1987 and 1988, and that respondent's *459 position with respect to these facts was not reasonable: (1) The returns at issue were secretly prepared by petitioner's husband under the pressures of a felony conviction; (2) petitioner's husband never had permission to sign petitioner's name to income tax returns in the past and did not have permission to sign the returns at issue; (3) petitioner did not sign the returns at issue; (4) petitioner's husband signed petitioner's name to the returns without her knowledge; (5) petitioner's questions regarding the filing of returns for the years at issue were dishonestly answered by her husband; (6) after learning that returns for the years in question were filed, petitioner was not apprised of the contents of the returns; (7) it was petitioner's practice in the past to examine returns prepared by her husband that were presented to her for her signature; and (8) petitioner, in writing, gave notice to respondent before the notice of deficiency was issued, no later than October 2, 1991, of her nonacquiescing to the joint returns filed by Mr. Lomanno for 1987 and 1988. In addition, the Government's position may be unreasonable if it failed to adequately investigate its case and to reevaluate *460 its position as new facts came to light. Frisch v. Commissioner, supra at 841. In spite of the fact that respondent recognized that the issue of consent was a question of fact, respondent did not interview petitioner prior to trial as to her intent or knowledge. The court found petitioner's testimony to be truthful and credible; moreover, it is reasonable to assume respondent's agents could have learned more facts relating to the factors to consider in this determination if such an interview would have been conducted. This case is clearly factually different from any of the cases cited by respondent. For example, Peirce v. Commissioner, T.C. Memo. 1982-154, where the Court found one spouse's refusal to sign a return to be due only to ill will towards the other spouse, the Court found that the avowed lack of intent did not truly relate to the filing of the joint return itself. Petitioner's lack of intent here is not attributable to any ill will towards her husband at the time the returns were filed, since she was ignorant of the filing of the returns in 1990, of the $ 60,000 of embezzlement income included therein, *461 and of Mr. Lomanno's failure to report other unrelated income. In addition, because the filing of such joint returns would have made her liable for taxes and deficiencies attributable to the income, which she knew nothing about, it can be said that her lack of intent was directly related to her desire not to have the effect of a joint return and nothing else. The Court concludes that, based upon the facts and circumstances of this case, respondent did not have a reasonable basis in both fact and law for the position that petitioner intended to file joint Federal income tax returns for 1987 and 1988. The next issue the Court must address is whether petitioner exhausted the administrative remedies available to her within the IRS as required by section 7430(b)(1). It is respondent's position that petitioner was mailed a 30-day letter reflecting certain audit adjustments, and that petitioner never responded to the 30-day letter by requesting an appeals conference, which was available under sections 601.105 and 601.106 of the Statement of Procedural Rules, 26 C.F.R. pt. 601 (1988). Respondent cites section 301.7430-1(b), Proposed Proced. & Admin. Regs., 57 Fed. Reg. 19828-01 *462 (May 8, 1992), for the proposition that a party under these circumstances has not exhausted administrative remedies within the IRS unless the party, prior to filing a petition in the Tax Court, participates in an Appeals Office conference. Petitioner's position is that she exhausted her administrative remedies based upon the written and oral requests made by her attorney, previously detailed by the Court, beginning September 25, 1991, seeking an administrative review of her tax liability for 1986, 1987, and 1988. These communications with respondent were prompted by collection actions taken against petitioner based upon the returns filed by Mr. Lomanno. The Court notes, however, that petitioner has no recollection of receiving or seeing the 30-day letter from respondent, and, in fact, at that time, petitioner was not even aware that embezzled income had been reported on the returns, as discussed earlier. Consequently, petitioner, without knowledge of material facts surrounding the returns, had no reason to file a protest or pursue the administrative review of the joint return issue, which subsequently came to light. In Phillips v. Commissioner, 88 T.C. 529, 532-533 (1987), *463 revd. 851 F.2d 1492 (D.C. Cir. 1988), this Court stated: In this case, however, the issue of whether petitioner was entitled to make a joint return, the sole issue tried, arose only after respondent had mailed his notice of deficiency. Consequently, petitioner was unaware of the issue until after his case was docketed in this Court, and his failure under these circumstances to pursue an Appeals Office conference is not fatal. The sole point of controversy between the parties, which respondent pursued to the end of the litigation, was not resolved through good-faith negotiation. Subsequent to docketing the case, petitioner's accountant communicated regularly with respondent's Appeals Office, and petitioner's counsel communicated with respondent's counsel on all matters in this case. * * *
Petitioner's counsel, after the notice of deficiency was issued and the petition was filed, continued to offer information, present evidence, and to meet with the IRS appeals officer assigned to the docketed case, Ms. Neidermeyer. The Court finds that petitioner sought administrative review of her tax liability prior to filing her petition in this Court. Beginning *464 in September 1991, her attorney made written and oral requests to meet with respondent's agents to discuss petitioner's tax liability. Respondent's representatives did not meet with petitioner or her counsel prior to the date the petition was filed. Petitioner's counsel did not turn his back on any opportunity afforded him to present evidence to support petitioner's position. The Court concludes, therefore, that petitioner satisfied the requirements of section 7430(b)(2). [5]
*465 Lastly, respondent contends that petitioner is not entitled to attorney's fees because petitioner's counsel represented petitioner "pro bono". Further, if petitioner is entitled to attorney's fees, respondent disagrees with the amount claimed by petitioner. It is respondent's position that petitioner is not entitled to an award of attorney's fees in the amount claimed of $ 125 an hour, which is in excess of the hourly rate of $ 75 set forth in section 7430(c)(1). Also, respondent asserts that $ 500 requested for an expert report of petitioner's marriage counselor, Dr. Klein, was not necessary for the preparation of petitioner's case and is not a reasonable expense. Dr. Klein was not allowed to testify as to petitioner's state of mind, and the report was presented to respondent only on the day of trial. In addition, respondent argues that hours claimed for work done on the innocent spouse issue should not be allowed, since Mr. McClain was, or should have been, aware that petitioner did not met the requirements to qualify as an innocent spouse under section 6013(e). Based on Mr. McClain's affidavit, petitioner claims an award of $ 12,387.50 for legal expense and fees incurred *466 on and after November 17, 1992. That amount is comprised of 94.5 hours at $ 125 per hour, $ 75 for a handwriting analysis report, and $ 500 for Dr. Klein's report and attendance. The Court is not convinced that Mr. McClain agreed to spend his time and effort on petitioner's case for free. Under section 7430(c)(1)(B)(iii), reasonable litigation costs include reasonable fees paid or incurred for the services of attorneys in connection with the Court proceeding. Though petitioner was not yet able to pay Mr. McClain for his services, the costs were, nevertheless, incurred. As to the proper amount, the Court agrees with respondent that $ 500 for Mr. Klein's report surfacing on the day of trial, which was not allowed into evidence, was not necessary to petitioner's case and is not a reasonable litigation cost. In addition, after November 17, 1992, it is apparent to the Court that petitioner had abandoned the innocent spouse claim, and all correspondence focused only on the claim that petitioner did not intend to file a joint return with Mr. Lomanno for 1987 and 1988. Therefore, the court finds that 1.5 hours claimed for work on the innocent spouse issue on November 24, 1994, *467 is not allowable as a reasonable litigation cost. Petitioner claims an award of attorney's fees in the amount of $ 125 per hour. Under section 7430(c)(1)(B)(iii), "such fees shall not be in excess of $ 75 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for such proceeding, justifies a higher rate." Petitioner submitted letters from other attorneys in the Cleveland, Ohio, area attesting to the fact that other attorneys and tax attorneys bill at rates of $ 170, $ 175, and $ 200 per hour. However, the prevailing hourly rate in a particular area, and the fact that no attorney would have performed the work for $ 75 per hour, are not special factors justifying an increase in the hourly rate under section 7430(c). Pierce v. Underwood, 487 U.S. 552 (1988); Cassuto v. Commissioner, 93 T.C. 256, 269 (1989), affd. in part, revd. in part, and remanded 936 F.2d 736 (2d Cir. 1991); Tinsley v. Commissioner, T.C. Memo. 1992-195. Petitioner did not seek a cost-of-living increase, *468 and there is no evidence in the record for such an amount. Therefore, the Court finds that petitioner is entitled to an award for attorney's fees at the rate of $ 75 per hour. The 93 hours allowed at an hourly rate of $ 75 amounts to $ 6,975. Petitioner is entitled to $ 75 for the handwriting analysis expert report, for a total of $ 7,050. Petitioner's motion for litigation and administrative costs in the amount of $ 7,050 will be granted. To reflect the foregoing, An appropriate order and decision will be entered.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years at issue. The petition in this case was filed May 4, 1992; therefore, the motion before the Court has been considered under sec. 7430↩ as amended by sec. 6239(d) of the Technical and Miscellaneous Revenue Act of 1988, Pub. L. 100-647, 102 Stat. 3743, effective for all civil tax proceedings commenced after Nov. 10, 1988. All Rule references are to the Tax Court Rules of Practice and Procedure.
2. The deficiencies in tax and the additions to tax are based on adjustments by respondent to the returns filed by Mr. Lomanno. At trial, respondent agreed that the court's holding would be adhered to with respect to the unpaid portion of the taxes shown as due and owing on the returns that had been assessed at the time of trial. No assessments have been made, however, of the deficiencies and additions to tax determined in the notice of deficiency.↩
3. Petitioner's motion suggested that she might later request a hearing to depose an Internal Revenue Service (IRS) Appeals Officer concerning purported statements by the officer to the effect that the IRS officer felt petitioner was a victim who should not be pursued. Subsequently, petitioner made no further request for a hearing. In response to petitioner's motion, respondent made a request for a hearing if↩ the Court in disposing of this motion relied on certain statements purportedly made by attorneys with respondent's District Counsel office immediately after the trial was completed, purportedly admitting that the government "did not have much chance to win this case". The Court does not view the accuracy of these allegations as determinative of the outcome of this motion and finds that a hearing is not necessary.
4. The pre-1986 version of sec. 7430 used the term "unreasonable". The Tax Reform Act of 1986, Pub. L. 99-514, sec. 1551(d)(1), 100 Stat. 2085, 2752, replaced the term "unreasonable" with the term "not substantially justified". This Court has concluded that the substantially justified standard is essentially a continuation of the prior law's reasonableness standard. Sher v. Commissioner, 89 T.C. 79, 84 (1987), affd. 861 F.2d 131 (5th Cir. 1988); Rutana v. Commissioner, 88 T.C. 1329↩ (1987).
5. Respondent contends that petitioner did not exhaust administrative remedies pursuant to sec. 301.7430-1(b), Proposed Proced. & Admin Regs., 57 Fed. Reg. 19828-01 (May 8, 1992). The proposed regulation cited by respondent became a final regulation on June 7, 1994, effective with respect to petitions filed after May 7, 1992. The petition in this case was filed on May 4, 1992. Even if the regulations relied on by respondent applied to petitioner, since petitioner did not receive the 30-day letter, sec. 301.7430-1(e), Proced. & Admin. Regs., would allow petitioner to be excepted from having to participate in a prepetition appeals office conference. See also the pre-existing regulations, sec. 301.7430-1(f)(2), Proced. & Admin. Regs., and Minahan v. Commissioner, 88 T.C. 492↩ (1987).