# United States Tax Court

T.C. Memo. 2023-134

## CHAMPIONS RETREAT GOLF FOUNDERS, LLC, RIVERWOOD LAND, LLC, TAX MATTERS PARTNER,
Petitioner

v.

## COMMISSIONER OF INTERNAL REVENUE,
Respondent

———————

Docket No. 4868-15.                                   Filed November 8, 2023.

———————

*Vivian D. Hoard*, for petitioner.

*Matthew D. Thom* and *Teri L. Jackson*, for respondent.

## MEMORANDUM OPINION

PUGH, *Judge*: This case is a partnership-level proceeding governed by the procedural rules of the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. No. 97-248, §§ 401–407, 96 Stat. 324, 648–71, which was in force when Champions Retreat Golf Founders, LLC (Champions Retreat), filed its federal partnership return and when petitioner, its tax matters partner, filed the Petition. Before the Court is petitioner's Motion for Reasonable Litigation or Administrative Costs (Motion for Costs) pursuant to section 7430 and Rule 231.[1] We conclude that petitioner is not a "prevailing party" within the meaning of section 7430 because the Internal Revenue Service (IRS or respondent) "establishe[d] that the position of the United States in the proceeding

———————

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, regulation references are to the *Code of Federal Regulations*, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.

[*2] was substantially justified." *See* § 7430(c)(4)(B)(i). We therefore will deny the Motion for Costs.

*Background*

The following facts are derived from our prior opinions in this case, the parties' pleadings and Motion papers (including the Declarations and Exhibits attached thereto), and the parties' Joint Stipulation of Facts. Champions Retreat is a Georgia limited liability company treated as a partnership for federal tax purposes with its principal place of business in Augusta, Georgia.

I.    *Conservation easement donation and reporting position*

Champions Retreat was formed on November 6, 2001, to develop and operate a golf course. On April 5, 2002, Champions Retreat acquired a 463.3-acre tract of land. On 95.34 acres it developed a neighborhood called Founders Village, and on 365.56 acres it built a 27-hole golf course. The golf course was completed in June 2005. The golf course has three nine-hole courses: the Creek course, designed by Gary Player; the Island Course, designed by Arnold Palmer; and the Bluff course, designed by Jack Nicklaus.

Champions Retreat was not profitable. After our decision in *Kiva Dunes Conservation, LLC v. Commissioner*, T.C. Memo. 2009-145, Douglas Cates, the accountant for Champions Retreat, proposed the donation of a conservation easement on the property including the golf course.

Kiokee Creek, a Georgia partnership, was formed on September 24, 2010, as a vehicle for investing in Champions Retreat. Its 15 original members, most of whom were Mr. Cates's clients, contributed a total of $2,705,000 for their interests. Kiokee Creek contributed $2,700,000 to Champions Retreat in exchange for a 15% interest.

On December 16, 2010, Champions Retreat conveyed an easement to the North American Land Trust (NALT) that covered 348.51 acres of the golf course (easement area).

Champions Retreat claimed a $10,427,435 charitable contribution deduction on its Form 1065, U.S. Return of Partnership Income, for the 2010 taxable year, for its grant of the easement to NALT. Champions Retreat included with its Form 1065 a copy of an appraisal performed by Claud Clark III that relied on the "before and after"

[*3] method to value the easement. *See* Treas. Reg. § 1.170A-14(h)(3)(i) and (ii). Mr. Clark concluded that the highest and best use of the property unencumbered by the easement was as a residential subdivision. On the basis of that conclusion, he calculated the fair market value of the easement to be $10,427,435.

## II.   *FPAA*

In November 2014 the IRS issued a notice of final partnership administrative adjustment (FPAA), denying Champions Retreat's $10,427,435 deduction because the conservation easement did not meet the requirements of section 170 and the easement did not have a value greater than zero. The FPAA stated four alternative positions: (1) the transfer of the 15% partnership interest from Champions Retreat to Kiokee Creek was a disguised sale; (2) Champions Retreat's allocation of the deduction to Kiokee Creek had no substantial economic effect; (3) Champions Retreat failed to comply with section 704 in decreasing capital accounts of the members receiving the charitable contribution deduction allocation; and (4) Champions Retreat improperly allocated interest income and ordinary business loss to its members. Petitioner timely petitioned this Court for redetermination.

## III.   *Litigation history: Champions I–III*

Petitioner argued at trial that the contribution of the easement to the NALT satisfied two conservation purposes: (1) "the protection of a relatively natural habitat of fish, wildlife, or plants, or similar ecosystem" and (2) "the preservation of open space (including farmland and forest land) where such preservation is . . . for the scenic enjoyment of the general public . . . and will yield a significant public benefit." § 170(h)(4)(A)(ii) and (iii). To support its contentions petitioner offered several expert witnesses: Keith Lawrence on land planning and civil engineering; Leslie Ager on fisheries biology; Christopher Wilson on wildlife biology and conservation; and Lee Echols on botany, conservation biology, and ecology. Respondent offered Reed Noss, who testified on conservation biology.

The parties also offered expert witnesses to value the easement donated. Petitioner hired Mr. Clark, this time to prepare an expert report. Mr. Clark determined that before the easement grant, the highest and best use of the property was as a partial residential subdivision with an 18-hole golf course, and after the easement grant, a 27-hole golf course. Using the "before and after" method, he opined that

[*4] the fair market value of the conservation easement was $10,883,789. Petitioner also offered the opinion of Thomas F. Wingard on the highest and best use of the property. Mr. Wingard concluded that the highest and best use of the property before the easement was as a partial residential development. Respondent offered the opinion of David G. Pope. Mr. Pope concluded that the highest and best use of the property before and after the easement grant was the operation of the golf course. According to Mr. Pope, because the highest and best use of the property remained the same before and after the easement grant, the fair market value of the conservation easement was $20,000.

In *Champions Retreat Golf Founders, LLC v. Commissioner* (*Champions I*), T.C. Memo. 2018-146, at *35–36, we concluded that Champions Retreat was not entitled to a deduction for a qualified conservation easement contribution for the 2010 tax year because its donation of a conservation easement in that year had not satisfied the conservation purpose requirement of section 170(h). Because we determined that Champions Retreat's easement donation did not entitle it to a deduction, we did not value the easement. *Champions I*, at *35–36. In *Champions Retreat Golf Founders, LLC v. Commissioner* (*Champions II*), 959 F.3d 1033, 1041 (11th Cir. 2020), the U.S. Court of Appeals for the Eleventh Circuit concluded that Champions Retreat is entitled to a charitable contribution deduction under section 170 for its donation, vacated our decision in *Champions I*, and remanded the case to us to determine the proper amount of the deduction. This remand required us to value the conservation easement at the time of the donation (and therefore the proper amount of the deduction). *Champions II*, 959 F.3d at 1041. In a supplemental memorandum opinion, *Champions Retreat Golf Founders, LLC v. Commissioner* (*Champions III*), T.C. Memo. 2022-106, at *41, we determined that the proper amount of the deduction is $7,834,091.

IV.    *Petitioner's Motion for Costs*

Petitioner moved for costs under section 7430 and Rule 231. Respondent filed a Response to the Motion for Costs, and petitioner filed a Reply to that Response. In its Motion for Costs, petitioner requested an evidentiary hearing with respect to an internal IRS appraisal prepared before the FPAA was issued.

Rule 232(a)(2) provides that "[a] motion for reasonable litigation or administrative costs ordinarily will be disposed of without a hearing unless it is clear from the motion, the Commissioner's written response,

**[\*5]** and the moving party's reply that there is a bona fide factual dispute that cannot be resolved without an evidentiary hearing." The internal appraisal that is the basis for the hearing request was not admitted into evidence although petitioner's expert considered it in developing his opinion. We excluded the appraisal from evidence because trial was de novo and respondent's position was the one taken in the FPAA and his Answer. *See Greenberg's Express, Inc. v. Commissioner*, 62 T.C. 324, 327–28 (1974) ("As a general rule, this Court will not look behind a deficiency notice to examine the evidence used or the propriety of [the Commissioner's] motives or of the administrative policy or procedure involved in making his determinations."). Petitioner has not explained how the position taken in an internal appraisal before the issuance of the FPAA or filing of respondent's Answer is relevant to our evaluation of the reasonableness of respondent's position in the FPAA or the Answer. The opinion offered in that appraisal does not make respondent's litigating position more or less reasonable. And whether respondent adopted or rejected the analysis in the internal appraisal, we still must evaluate whether his position was reasonable on its face. Therefore, because it is not "clear from [the motion papers] that there is a bona fide factual dispute that cannot be resolved without an evidentiary hearing," Rule 232(a)(2), we will decide the Motion without a hearing.

*Discussion*

Section 7430 provides for the award of litigation or administrative costs to a taxpayer in a proceeding brought by or against the United States involving the determination of any tax, interest, or penalty. An award may be made where the taxpayer can demonstrate that it: (1) is the "prevailing party," (2) has exhausted administrative remedies within the IRS,[2] (3) has not unreasonably protracted the proceeding, and (4) has claimed "reasonable" costs. § 7430(a) and (b)(1), (3), (c)(1) and (2); *Alterman v. Commissioner*, 146 T.C. 226, 227 (2016). The taxpayer bears the burden of proving that these requirements are met. Rule 232(e). The requirements are conjunctive; failure to satisfy any one of them precludes an award of costs to the taxpayer. *See Alterman*, 146 T.C. at 227; *see also Minahan v. Commissioner*, 88 T.C. 492, 497 (1987). The decision to award fees is within the sound discretion of the Court. *See Rasbury v. IRS (In re Rasbury)*, 24 F.3d 159, 165–68 (11th Cir. 1994) ("[D]enial of a section 7430 motion is reviewed for abuse of discretion.").

---

[2] This requirement applies only as to litigation costs. *See* § 7430(b)(1).

6

[*6] Respondent disputes that petitioner satisfies the first requirement (whether it qualifies as the "prevailing party") and the fourth (whether it has claimed "reasonable" costs); respondent concedes that petitioner exhausted all available administrative remedies and did not unreasonably protract the proceeding. We begin with the first requirement.

I.   *Prevailing party*

To be the "prevailing party," a party must "substantially prevail[]" with respect to the amount in controversy or "the most significant issue or set of issues presented," *see* § 7430(c)(4)(A)(i), and must satisfy certain net worth requirements, *see* § 7430(c)(4)(A)(ii). Respondent agrees that petitioner "substantially prevailed" in the case.

A party will not be treated as the prevailing party, however, if the Commissioner establishes that "the position of the United States in the proceeding was substantially justified." § 7430(c)(4)(B)(i). The Commissioner bears the burden of making that showing. *Id.*

Respondent contends that petitioner is not the prevailing party because it failed to prove that it meets the net worth requirement and, even if it did meet that requirement, because respondent's position was substantially justified. Failing either prong would be fatal to petitioner's Motion for Costs. As we explain below, we agree with respondent that his position in this proceeding was substantially justified. We therefore need not address whether petitioner meets the net worth requirement of section 7430(c)(4)(A)(ii).

When a taxpayer seeks both administrative and litigation costs, we apply a bifurcated analysis to determine whether "the position of the United States" was substantially justified in the administrative proceeding and the litigation. *Maggie Mgmt. Co. v. Commissioner*, 108 T.C. 430, 442 (1997). For purposes of the administrative proceeding, the IRS's position is that taken at the earlier of (1) the date the taxpayer receives the decision of the IRS Appeals Office or (2) the date of the FPAA. *See* § 7430(c)(7)(B); *Bliss Valley Growers v. Commissioner*, T.C. Memo. 1994-533, 1994 WL 579951, at *2; *see also Clovis I v. Commissioner*, 88 T.C. 980, 982 (1987) (comparing FPAAs to notices of deficiency and concluding that they have similar functions). The "position of the United States" in a Tax Court proceeding is generally that set forth in the Commissioner's answer. *See* § 7430(c)(7)(A); *Maggie Mgmt. Co.*, 108 T.C. at 442.

**[\*7]**    In the FPAA and respondent's Answer, the IRS's primary position was that the easement donation did not meet the requirements of section 170 and the easement did not have a value greater than zero.[3] Respondent also listed several alternative theories that he later conceded.

A position is "substantially justified" if it is "justified to a degree that could satisfy a reasonable person" or has a "reasonable basis both in law and fact." *Swanson v. Commissioner*, 106 T.C. 76, 86 (1996) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). The determination of reasonableness is based on all the facts of the case and the available legal precedents. *Maggie Mgmt. Co.*, 108 T.C. at 443. A position has a reasonable basis in fact if there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Underwood*, 487 U.S. at 564–65 (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Maggie Mgmt. Co.*, 108 T.C. at 443. A position has a reasonable basis in law if legal precedent substantially supports the Commissioner's position given the facts available to him. *Maggie Mgmt. Co.*, 108 T.C. at 443. The Commissioner's position may be substantially justified even if incorrect "if a reasonable person could think it correct." *Id.* (quoting *Underwood*, 487 U.S. at 566 n.2).

Courts have found that the Commissioner's position was substantially justified in cases involving primarily factual questions. *See, e.g.*, *Bale Chevrolet Co. v. United States*, 620 F.3d 868 (8th Cir. 2010); *see also Kaffenberger v. Commissioner*, 314 F.3d 944, 960 (8th Cir. 2003) (finding government's position substantially justified where issues were of a "fact intensive nature"); *Grant v. Commissioner*, 103 F.3d 948, 953 (11th Cir. 1996) ("[I]t was not until the trial of this case . . . that this matter could properly be resolved in the taxpayers' favor."), *aff'g* T.C. Memo. 1995-374.

Ordinarily, this Court reviews item by item, whereby "[t]he justification for each of [the Commissioner's] positions must be

---

[3] Although the title of petitioner's Motion for Costs includes both litigation and administrative costs, it focuses only on litigation costs. The documents submitted to support its incurred costs correspond to the initiation of the proceedings in this Court. And even though it contends also that respondent's position in the FPAA was not substantially justified, it does not distinguish between respondent's positions in the FPAA and in the Answer. Nor does it point to any change in the available facts and circumstances or legal precedent between these dates. Therefore, we will not analyze respondent's positions separately. *See Nguyen v. Commissioner*, T.C. Memo. 2003-313.

[*8] independently determined." *Foothill Ranch Co. v. Commissioner*, 110 T.C. 94, 97 (1998).[4] We will analyze whether respondent's position was substantially justified with respect to the requirements of section 170, the value of the easement, and conceded issues separately.

A. *Section 170*

The first hurdle petitioner must face is persuading us that respondent's position that the easement did not have a valid conservation purpose, which also was our conclusion in *Champions I*, was unreasonable. That is a tall but not an impossible hurdle to clear. In *Dixon v. Commissioner*, T.C. Memo. 2006-97, 2006 WL 1275497, at *10, we explained:

> Common sense dictates that if the Government was able to prevail at trial (only to lose on appeal), its position ordinarily will have been reasonable. See H. Rept. 97-404, at 15 (1981) (stating that in such situation "the appellate court would not normally award attorney's fees to the taxpayer since the trial court, by definition, had found the government's position to be reasonable"); S. Comm. on Fin., Technical Explanation of Committee Amendment, 127 Cong. Rec. 32070, 32078 (1981) (same); see also *Ness v. Commissioner*, 73 AFTR 2d 94-1195, at 94-1196 (9th Cir. 1994) (fact that the Commissioner prevailed in the Tax Court, while "not dispositive", is "significant"). On the other hand, it is "not always * * * true" that trial courts "[act] on a soundly reasoned basis in every tax case." *Huckaby v. U.S. Dept. of Treasury*, 804 F.2d 297, 299 (5th Cir. 1986); see also *Henry v. Commissioner*, 34 Fed. Appx. 342, 345 (9th Cir. 2002) (Court of Appeals had previously "found clear error in the Tax Court's findings" on negligence issue, which "leads to the conclusion that the Commissioner's position was not substantially justified").

---

[4] An item-by-item review was rejected in *United States v. Johnson*, 920 F.3d 639, 649–50 (10th Cir. 2019), adopting a "holistic approach" that we followed in *Morreale v. Commissioner*, T.C. Memo. 2021-90, because appeal of that case was to the U.S. Court of Appeals for the Tenth Circuit. *See Golsen v. Commissioner*, 54 T.C. 742, 757 (1970), *aff'd*, 445 F.2d 985 (10th Cir. 1971). We are bound by *Foothill Ranch* and follow that framework here but note that a holistic view of the Government's position would not change the outcome.

**[*9]**    We have carefully reviewed the Eleventh Circuit's analysis of the conservation purpose in this light. While we understand their firm rejection of our analysis, we also note disagreement among the panel as to whether the golf course satisfied the requirement to protect natural habitat for valuable species of flora and fauna. The panel did agree that the golf course preserved open spaces, but we see no basis in their analysis for holding that our original conclusion that there was insufficient public access to the property was unreasonable. And thus we cannot conclude that respondent's position in the FPAA as well as in the Answer was an unreasonable one.

1.    *Natural habitat*

Determining whether the easement met any of the conservation purposes pursuant to section 170 was a fact-intensive inquiry. We and the Eleventh Circuit reached our decisions only after a careful evaluation of all the facts and expert opinions, including five experts on flora and fauna habitat.

It was not unreasonable for respondent to question whether a highly manicured and chemically treated private golf course would meet the "relatively natural habitat" requirement. *See Champions II*, 959 F.3d at 1041–42 (Grant, J., concurring in part, dissenting in part) ("[T]he presence of animals cannot hide that a lot of the easement is highly developed and at least somewhat hazardous to certain species. And no matter how many animals live on the Champions easement, the reality remains the same: with the chemicals, imported grasses, large fans, artificial drainage, and water pumping, it is not at all clear that the easement amounts to a 'relatively natural habitat.'"). Petitioner did not point to any law that would have rendered respondent's position legally unsupported. It relied on *Kiva Dunes*, *see supra* p. 2, but that case also required an intensive factual inquiry. Respondent did not take the position that the conservation purposes could *never* be met if an easement encumbered a golf course. Furthermore, shortly after this case was petitioned, we denied a deduction for the contribution of an easement on a golf course under similar facts. *See Atkinson v. Commissioner*, T.C. Memo. 2015-236, at *34–39 (determining that an easement encumbering a golf course failed to provide relatively natural habitat for the few rare, endangered, or threatened species sighted on the property because of the presence of nonnative grasses on the property and the regular maintenance, mowing, and pesticide application over the easement area, which severely impacted the quality of the land as habitat).

**[\*10]**  2.  *Open space*

The facts also provided a reasonable basis for respondent's position (and our conclusion) that the easement area did not provide an open space for the enjoyment of the public. The golf course on the easement area is gated and can be accessed only by its members, raising concerns about whether and to what extent the public would be able to enjoy this open space. Respondent relied on Treasury Regulation § 1.170A-14(d)(4)(ii)(B), which states that although physical public access to the property is not required, "the public benefit from [a] donation may be insufficient to qualify for a deduction if only a small portion of the property is visible to the public." The Eleventh Circuit also cited that regulation. *Champions II*, 959 F.3d at 1040.

Whether the easement satisfied the open space conservation purpose ultimately came down to interpreting whether the portion of the easement visible to the public provided "scenic enjoyment" or "a significant public benefit." *See* § 170(h)(4)(A)(iii). We (and respondent) concluded that the limited views visible from a canoe or kayak were not enough to satisfy the statute and the applicable regulations. *Champions I*, at \*32. The Eleventh Circuit disagreed, holding that the trees visible over the high river banks was a much better view "[w]hen compared to a condominium building or even private homes." *Champions II*, 959 F.3d at 1040.

To show that his position was substantially justified, respondent needs to demonstrate that his position was supported by "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Underwood*, 487 U.S. at 564–65 (quoting *Consol. Edison Co.*, 305 U.S. at 229); *see also Maggie Mgmt. Co.*, 108 T.C. at 443. Consistent with the applicable regulations and the facts of the case, it does not seem unreasonable to conclude that views from the rivers alone were too small a portion, even if ultimately the Eleventh Circuit considered those views superior to other views along the rivers and sufficient in quality and quantity to support the deduction. We therefore hold that respondent's position was substantially justified.

B.  *Valuation*

Valuation of the easement also was a fact-intensive exercise. As we explained in *Champions III*, we had concerns about both parties' valuations. First, petitioner's valuation expert, Mr. Clark, changed his conclusion as to the property's highest and best use from the position

**[\*11]** taken in his appraisal in support of Champions Retreat's return position to his expert report at trial. He concluded originally that the property's highest and best use before the grant of the easement was as a real estate subdivision but opined at trial that the highest and best use was as an 18-hole golf course plus an additional subdivision. And at trial he valued the property with a much smaller residential redevelopment of the nine-hole Bluff course higher than he valued a complete residential redevelopment of the entire 27-hole golf course.[5] He ultimately opined that the fair market value of the easement was $10,883,789. Respondent's valuation expert, Mr. Pope, concluded that the highest and best use before the easement was as a 27-hole golf course. And he ultimately opined that the fair market value of the easement was $20,000. Thus, the difference at trial between Messrs. Clark and Pope was the development of the nine-hole Bluff course.

Ultimately, in *Champions III* we reduced Mr. Clark's valuation because it was not supported by facts shown at trial. We also rejected Mr. Pope's valuation. That conclusion establishes both sides were partly right: Petitioner was right that Mr. Pope undervalued the easement, and respondent was right that Mr. Clark overvalued the easement (by a meaningful amount).[6] But because we agreed with respondent that the easement was overvalued, we conclude that he was substantially justified in rejecting Champions Retreat's original valuation on its partnership return.

C.    *Conceded issues*

Finally, losing a case or conceding an issue "does not by itself establish that the position taken is unreasonable" but is "a factor that may be considered." *Maggie Mgmt. Co.*, 108 T.C. at 443.

Respondent conceded several alternative theories for decreasing the charitable contribution deduction in this case (conceded issues). Because he did so before trial, we have no evidence in the record or the benefit of any briefing specific to these conceded issues. As respondent

---

[5] In his appraisal Mr. Clark proposed a subdivision of 390 lots. In his expert report he proposed a subdivision of 210 lots.

[6] The original valuation on Champions Retreat's partnership return of $10,427,435 and the later valuation at trial of $10,883,789 overstated the correct valuation of $7,834,091 by 33.1% and 38.9%, respectively (rounded to the nearest tenth). Stated another way, our determination that the easement was worth $7,834,091 reduced the original and later valuations by 24.9% and 28%, respectively. The magnitude of our adjustment is meaningful no matter how we calculate it.

**[*12]** explained in his Response to the Motion for Costs, he conceded the alternative theories to focus on the main dispute between the parties: the conservation purpose and the value of the easement. The Supreme Court has explained that "[a] request for attorney's fees should not result in a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

In addition, petitioner did not indicate how much of its litigation costs was allocable to addressing the conceded issues. Thus, even if we concluded those alternative theories were not substantially justified, we could not award litigation costs corresponding to the conceded issues.

II.    *Reasonable costs*

Although respondent also disputes the last requirement—that the claimed costs be "reasonable"—in the light of our resolution of the "prevailing party" issue, we need not address it. *See Minahan*, 88 T.C. at 497.

III.   *Conclusion*

Because respondent showed that his position was "substantially justified" under section 7430(c)(4)(B)(i), petitioner is not a "prevailing party" entitled to recover costs. *See* § 7430(a), (c)(4).

To implement the foregoing,

*An appropriate order will be issued.*